752 So.2d 739 (1999)
Billy BOULLT and Judy Boullt
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.
No. 99-C-0942.
Supreme Court of Louisiana.
October 19, 1999.
Rehearing Denied November 19, 1999.
*740 Philip Thomas Deal, Deal & Cook, Monroe, Counsel for Applicant.
Anthony J. Bruscato, Juan Antonio Tramontana, Patrick Scott Wolleson, Bruscato, Tramontana & Wolleson, Monroe, Counsel for Respondent.
KNOLL, Justice.[*]
This writ concerns divorced parents with separately owned insurance policies seeking damages under their respective policies for the wrongful death of their daughter who was a guest passenger in a nonowned automobile. The issue is whether the parents' individual claims for the wrongful death of their child violates Louisiana's anti-stacking law. We conclude that each parent is seeking damages for an independent cause of action under a single policy for which he or she is the named insured and is not stacking one coverage on top of another. Thus, under the unique facts of this case, Louisiana's anti-stacking law does not bar recovery to the parents' individual claims.

FACTS
On November 6, 1993, Andrea Boullt ("Andrea") suffered fatal injuries in a one-car accident while a guest-passenger in a vehicle owned by Louis Costanza. It is undisputed that the sole cause of the accident was the negligence of the host driver. At the time of Andrea's death, her parents, Billy and Judy Boullt (the "Boullts"), were divorced, maintained separate households, and enjoyed joint custody of their daughter. It was stipulated that Andrea was considered a resident of each of the Boullts' separate households for coverage purposes at the time of her death. The Boullts settled Andrea's survival action with the host driver's insurer for policy limits of $100,000.
The Boullts each purchased separate automobile insurance policies from State Farm on their own vehicles.[1] Each was a named insured only under his or her respective policy. Each policy provided UM coverage to the insured with limits of $50,000 per accident. It was stipulated that each of the Boullts' wrongful death claims exceeded the limits of liability coverage paid from the host driver's policy and under the policies issued to the Boullts by State Farm. It was also stipulated that the Boullts were each seeking to satisfy their individual wrongful death claim by claiming a separate payment under his or her own UM policy. Notwithstanding, State Farm contended that the Boullts could recover only under one policy. State Farm tendered the limits of its UM policy issued solely to Billy Boullt by check made payable to Billy and Judy jointly and refused to pay the limits of Judy Boullt's UM policy, claiming that the anti-stacking statute precluded recovery under both policies, thus necessitating the Boullts bringing this wrongful death litigation for payment of their respective claims.

PROCEDURAL HISTORY
The trial court denied the Boullts' claims against State Farm and dismissed the suit with prejudice, citing Schwankhart v. Louisiana Dep't of Transp. & Dev., 94-0735 *741 (La.App. 4 Cir. 11/30/94), 646 So.2d 1242. The Second Circuit Court of Appeal reversed and held that the Boullts' claims against State Farm seeking recovery under their own individual UM policy did not violate Louisiana's anti-stacking statute because the Boullts were seeking separate recovery under his or her own separate UM policy for his or her own individual wrongful death damages. Boullt v. State Farm Mut. Auto. Ins. Co., 31,709 (La.App. 2 Cir. 3/1/99), 728 So.2d 1064, 1065. The court of appeal agreed with State Farm and recognized that had Andrea lived, as an "insured" under both her parents' policies, the anti-stacking statute would have limited her recovery to only one of her parents' UM policies. However, the appellate court reasoned that the wrongful death claims asserted by each of the Boullts for their own injuries were separate claims of damages sustained by each parent personally as a result of the loss of a child. The court also reasoned that, as it considered each parent an "insured" under the anti-stacking statute, allowing each to recover under their own policy did not violate the statute or its public policy. Id.
We granted State Farm's writ application to resolve a split among the circuits. Boullt v. State Farm Mut. Auto. Ins. Co., 99-0942 (La.5/28/99), 743 So.2d 655. The Fourth Circuit in Schwankhart, 646 So.2d at 1244, held that divorced parents seeking recovery for individual wrongful death claims under his or her own policy were limited to one policy concluding that "[m]ultiple persons recovering for a wrongful death should be restricted to the same total recovery which would have been available to the injured person if he had survived." Likewise, the Third Circuit in Sheppard v. State Farm Ins. Co., 614 So.2d 208, 211 (La.App. 3 Cir.1993); Vincent v. State Farm Mutual Auto. Ins. Co., 526 So.2d 818, 820 (La.App. 3 Cir.), on reh'g, 526 So.2d 818, 823-24, writ denied, 532 So.2d 150 (La.1988); and Salter v. State Farm Mut. Auto. Ins. Co., 520 So.2d 877, 879 (La.App. 3 Cir.1987) has essentially held that Louisiana's anti-stacking statute restricts claimants for wrongful death damages to the full limits of UM liability coverage contained in one policy covering one vehicle.
State Farm argues that the court of appeal erred in concluding that the Boullts could each collect the policy limits for the wrongful death of Andrea under their own UM policy. State Farm reasons that under La. R.S. 22:1406(D)(1)(c), had Andrea lived, she, as an occupant of a non-owned vehicle and a resident of each of the Boullts' households, could have recovered first from the host driver's liability policy and then from only one of her parents' UM policies. State Farm contends that the court of appeal's error resulted from its erroneous assessment that each parent was considered as the "insured" under La. R.S. 22:1406(D)(1)(c) and that clearly it is only the person who is injured or killed, i.e., Andrea, who is the "insured." For authority, State Farm cites Schwankhart, 646 So.2d at 1242; Vincent, 526 So.2d at 818; Salter, 520 So.2d at 877; and the 1986 first edition of the McKENZIE & JOHNSON, LOUISIANA CIVIL LAW TREATISE ON INSURANCE § 123 ("[M]ultiple persons recovering for a wrongful death should be restricted to the same total recovery which would have been available to the injured person if he had survived.").[2]
The Boullts counter that La. R.S. 22:1406(D)(1)(c) is not applicable arguing that no stacking of policies has taken place because they are divorced parents, have separate UM policies insuring separate vehicles, have separate and independent causes of action, and are seeking separate recovery of their own individual damages arising from the wrongful death of Andrea. That is, each parent is asserting an independent *742 cause of action for his or her own damages under a single policy and not attempting to stack recovery under two policies. The Boullts point out that, at the time of the accident, neither of the two was an insured under the other's policy and could not assert a claim under the other's policy. Thus, because the policies and claims are separate and distinct, Billy is entitled to seek satisfaction of his wrongful death claim from his policy and Judy is entitled to seek satisfaction of her wrongful death claim from her policy. The Boullts also urge that State Farm's hypothetical argument premised upon Andrea having survived the accident and being limited to recovery under only one policy is irrelevant, because had she lived they would have no wrongful death claim to assert. As authority, the Boullts cite LA. CIV.CODE art. 2315.1(A), 2315.2; Guidry v. Theriot, 377 So.2d 319, 322 (La.1979); and Rogers v. Ambassador Ins. Co., 452 So.2d 261 (La.App. 5 Cir.), writ denied, 457 So.2d 14 (La.1984).

LAW AND ANALYSIS
State Farm stipulated that at the time of the fatal accident each of the Boullts' policies provided UM coverage to the insureds and that the respective policies covered this accident. Coverage was not disputed. Thus, our sole inquiry is whether allowing the Boullts to each seek recovery under their own UM policy for their own individual damages from the wrongful death of their daughter violates La. R.S. 22:1406(D)(1)(c)(i) by impermissibly stacking UM policies.
Stacking of UM coverages occurs when the amount available under one policy is inadequate to satisfy the damages alleged or awarded the insured and the same insured seeks to combine or stack one coverage on top of another for the same loss covered under multiple policies or under multiple coverages contained in a single policy. Interpolicy stacking occurs when the insured attempts to recover UM benefits under more than one UM coverage provision or policy, while intrapolicy stacking occurs when the insured attempts to recover UM benefits under a single policy of insurance covering multiple motor vehicles. See La. R.S. 22:1406(D)(1)(c); LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 169.4, at 169-15 to -14, 169.7, at 169-20 to -21 (3d ed.1998); see also Wyatt v. Robin, 518 So.2d 494, 496 (La.1988) (Lemmon, J., concurring).
With one exception, Louisiana's antistacking statute prohibits insureds from combining or stacking UM benefits either interpolicy or intrapolicy. As such, La. R.S. 22:1406(D) provides in pertinent part that:
(1)(c)(i) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
(ii) With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, the following priorities of recovery under uninsured motorist coverage shall apply:
(aa) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(bb) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one coverage from more than one uninsured motorist policy be available as *743 excess over and above the primary coverage available to the injured occupant.
Thus, under the first paragraph of the statute, an insured seeking recovery with multiple limits of UM coverage available either interpolicy or intrapolicy is limited to recovery under only one policy and may not combine or stack coverages. Under the second paragraph, an exception to stacking is permitted if: (1) the injured party is occupying an automobile not owned by him; (2) the UM coverage on the vehicle in which the injured party was an occupant is primary; and, (3) should that primary UM coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other UM coverage available to him. Nall v. State Farm Mut. Auto. Ins. Co., 406 So.2d 216, 218 (La.1981); see also Wyatt, 518 So.2d at 495. Clearly, the second paragraph is not pertinent as neither of the Boullts meet the specified criteria. Thus, the inquiry is whether the first paragraph precludes the Boullts from separately seeking recovery under his or her respective policy.
The issue of stacking only arises once it has been determined that an individual insured has two or more policies or a single policy covering multiple vehicles applying to the same loss. It is also clear that in order for stacking to be an issue, the individual seeking to stack coverages must in fact be an insured as to the particular loss under more than one policy or a single policy covering multiple vehicles at issue, entitled to recover under all the policies or a single policy covering multiple vehicles, and that each policy or single policy covering multiple vehicles applies to the activity in question. "The question of `stacking' only arises once it is determined that the person seeking to cumulate benefits on two or more uninsured motorist coverages is an insured under the terms of those policies." Seaton v. Kelly, 339 So.2d 731, 735 (La.1976); see also Magnon v. Collins, 98-2822, at 4 (La.7/7/99), 739 So.2d 191, 194; Taylor v. Rowell, 98-2865, at 6 (La.5/18/99), 736 So.2d 812, 816; Howell v. Balboa Ins. Co., 564 So.2d 298, 301-02 (La.1990) (all noting that the plaintiff must be an "insured" under the policy to be entitled to UM coverage).
We agree with State Farm's observation that had Andrea lived, as an occupant of a non-owned vehicle, La. R.S. 22:1406(D)(1)(c)(ii) would have limited her recovery first from the host driver's liability policy and then from only one of the Boullts' UM policies. Indeed, we have held that the anti-stacking statute precludes the injured insured from stacking coverage beyond what the statute authorizes. See Nall, 406 So.2d at 218. Under these circumstances, the Boullts would have neither a cause of action for the wrongful death of Andrea nor would they have inherited a survival action jointly. Thus, under the statute neither of the Boullts would have been an insured seeking recovery. Instead, only Andrea, as the injured insured, would have had a remedy under our codal law. This observation by State Farm, however, is irrelevant and immaterial to the inquiry before us. For this observation to be dispositive to our inquiry, we would have to be faced with a different set of facts and Andrea's claim for personal injuries would have to be synonymous with her parents' claims for her wrongful death.
This Court has recognized this critical distinction in our recent decision in Walls v. American Optical Corp., 98-0455 (La.9/8/99), 740 So.2d 1262. In Walls, plaintiffs, the survivors of a sandblaster, sued the executive officers of the decedent's employer seeking damages for his wrongful death. As we made clear, the survival action and the wrongful death action are two separate and distinct causes of action that arise at different times, address themselves to the recovery of damages for different injuries and losses, and accrue to different tort victims. Id. at p. 14, 740 So.2d at 1273. The survival action comes into existence simultaneously with the tort, permits recovery only for the *744 damages suffered by the victim from the time of injury to the moment of death, and is transmitted to the victim's beneficiaries upon his death. Id. Conversely, the wrongful death action arises only if and when the victim dies and compensates the beneficiaries for their own individual injuries that occur at the moment of the victim's death and thereafter. Id. at p. 9, 740 So.2d at 1270.
Analogously, Andrea's personal injury action had she lived versus the wrongful death action granted her parents because of her death are two separate and distinct causes of action that arise at different times, address themselves to the recovery of damages for different injuries and losses, and accrue to different tort victims. Had Andrea lived, her parents would have no cause of action. Instead, only Andrea would have suffered injury and only she would have a remedy under our law. In Walls, we rejected the argument, similar to the one that State Farm makes in the case sub judice, that the wrongful death action was derivative of the tort victim's cause of action. Id. at p. 15, 740 So.2d at 1270. See also Taylor v. Giddens, 618 So.2d 834, 840 (La.1993); Guidry, 377 So.2d at 319; and LA.CIV.CODE art. 2315.2. The Boullts' codal rights to recover for their individual damages and injuries as a result of their daughter's death are independent of what Andrea's status or right would have been under the anti-stacking statute.
The unique facts and circumstances of this case include that the Boullts are divorced and have separate UM policies. Further, the Boullts are legal strangers not only to each other under the law but also to the other's UM policy. Separate premiums had been charged to and paid by different insureds for each of the separate UM policies. Further, the separate policies provided coverage to different insureds covering separate risks. Each parent suffered his and her own injuries although arising from a single occurrence, i.e., Andrea's death. Judy was not an insured under the policy issued to Billy, and Billy was not an insured under the policy issued to Judy. The contracting parties under their respective policies each reasonably expected that only an insured would recover under his or her own policy if the policy provided coverage to the activity in question. The expectations of the contracting parties under Billy's policy were separate and independent of the expectations of the contracting parties under Judy's policy. State Farm contractually agreed to provide each of the Boullts with UM coverage. By allowing State Farm to collect separate premiums from each of the Boullts on their individual policy covering different risks and then deny recovery to the insureds under the polices would be tantamount to State Farm issuing illusory coverage to the parties, providing the insureds with less coverage than he or she paid for, and would clearly violate the reasonable expectation of the contracting parties.[3] Louisiana's public policy strongly favors UM coverage and a liberal construction of the UM statutes. Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982). Absent a clear violation of the anti-stacking statute, the parties' intent governs the rights and obligations of the parties. Indeed, an opposite finding today would serve only to frustrate the reasonable expectations of the contracting parties and would be directly contrary to the primary objective of the UM schemewhich is to promote recovery of damages for innocent automobile accident *745 victims by making UM coverage available for their benefit when the tortfeasor is without insurance or is inadequately insured. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992). Simply stated, this case is not a situation of an insured stacking but of distinct and individual insureds each seeking separate recovery under separate policies covering the same event.
We find no support for State Farm's argument. We conclude that by allowing the Boullts to each seek recovery under their own policy for their own individual damages violates neither the letter nor the spirit of Louisiana's anti-stacking statute.[4] To the extent Schwankhart, 646 So.2d at 1242; Sheppard, 614 So.2d at 208; Vincent, 526 So.2d at 818; and Salter, 520 So.2d at 877 conflict with our holding today, they are overruled.

DECREE
For the foregoing reasons, we affirm the judgment of the court of appeal reversing the trial court's judgment in favor of State Farm and rendering judgment in favor of Billy and Judy Boullt.
AFFIRMED.
LEMMON and VICTORY, JJ., dissent and assign reasons.
LEMMON, J., Dissenting.
Uninsured and underinsured motorist (UM) coverage is designed to provide protection to persons insured under the UM feature of the policy who sustain damages through the fault of uninsured or underinsured motorists. As restricted by policy limits and by anti-stacking provisions, UM coverage provides insurance protection to insured persons that is otherwise absent or inadequate because of the tortfeasor's insurance deficiencies.
Resolution of the issue in the present case requires an analysis of the scope of UM coverage. La.Rev.Stat. 22:1406 D(1)(a)(i) requires a UM policy to include coverage "for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages ... because of bodily injury, sickness or disease, including death resulting therefrom." The statute therefore contemplates two types of recovery under UM coverage. First, in cases of non-fatal injury, payment of nonpunitive damages will be made to any directly injured person who is an insured under the policy. Second, in cases of fatal injury, payment of nonpunitive damages will be made to the tort victim's beneficiaries, specified in the survivorship and wrongful death statutes, when the tort victim was an insured under the policy.
Since the present case did not involve a non-fatal injury, no payment to the directly injured tort victim was implicated. This fatal injury case only implicated payment to the tort victim's statutory beneficiaries who were entitled to recover survivorship damages and wrongful death damages from the tortfeasor. The statutory beneficiaries in this case were both of the tort victim's parents, each of whom was entitled to recover from the tortfeasor (if there had been adequate insurance) the survivorship damages sustained by the tort victim and the wrongful death damages that each parent sustained.
The survivorship damages were paid to both parents (according to a stipulation) by the tortfeasor's liability insurer. The only damages at issue are the wrongful death damages due to each parent by the under-insured tortfeasor. The complicating factor is that each parent owned a policy with UM coverage that was available for recovery by both parents of the wrongful death damages sustained by both.
If only one parent (for example, the father) had owned a policy with UM coverage, then both the father and the mother *746 would have been entitled to recover wrongful death damages from that UM insurer, up to the policy limits.[1] Indeed, the UM carrier in the present case did pay both parents wrongful death damages under one policy, but the policy limits did not allow full recovery.
Because there were two policies with UM coverage, each parent also would have been entitled to recover wrongful death damages under the second policy (up to the policy limits), except for the second limitation on recovery (in addition to policy limits). That second limitation is the anti-stacking statute which prohibits (with exceptions not applicable here) recovery under a second policy with UM coverage after there has been recovery by the same claimant(s) under another policy with UM coverage. This prohibition applies whether the claimant is the injured tort victim (who was insured under the policy) in the case of a non-fatal injury or the statutory beneficiary of the fatally injured tort victim (who was insured under the policy).
But for the anti-stacking statute, both parents would have been entitled to recover wrongful death damages under both policies, up to the policy limits of each policy. However, the anti-stacking statute unambiguously prohibits recovery under the second policy by the claimants, each of whom has already recovered some wrongful death damages under another policy with UM coverage.
The majority seems to refuse application of the anti-stacking statute because each parent owns a separate policy with UM coverage applicable when his or her child is fatally injured. However, neither the UM statute nor the UM provisions of the policy provides for payment to a person simply because he or she is the owner of a policy with UM coverage. For the owner of the policy to be a successful claimant under the UM coverage, the owner must be either the insured person injured in a non-fatal accident or a statutory beneficiary of the insured person who was fatally injured. While each parent in the present case falls under the second category of claimants, the fact that each parent happens to be the owner of a separate policy with UM coverage does not entitle each to defeat the clearly applicable non-stacking statute, despite the fact that each paid a separate premium for a separate policy with UM coverage.[2]
VICTORY, J., dissenting.
I disagree with the conclusion that Louisiana's anti-stacking law does not bar recovery to the divorced parents' wrongful death claims under two separate insurance policies containing uninsured motorist coverage. Recovery under these two separate policies is prohibited by La. R.S. 22:1406(D)(1)(c)(i) which provides, in pertinent part, as follows:
If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(1), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; ... [Emphasis added.]
In analyzing the statute, the court of appeal held that "[i]f each parent is considered as the `insured' under the anti-stacking statute, allowing them to recover under their own individual UM policies does no violence to the statute or its underlying premise." Boullt v. State Farm Mut. *747 Auto. Ins. Co., 31,709 (La.App. 2 Cir. 3/1/99), 728 So.2d 1064, 1066. Although it was in error, the court of appeal properly focused on the decisive issue in this case: who is considered the "insured" under La. R.S. 22:1406(D)(1)(c)(i)? Clearly, the only way the parents can recover under their respective UM policies is for each of them, rather than Andrea, to be the "insured" under the anti-stacking statute. The majority does not analyze the statute and resolve this critical issue, although it admits that Andrea, as the "injured insured," would have been limited to only one UM policy had she lived. The very reason she would be limited is because she, not her parents, is the "insured" under the anti-stacking statute.[1]
The observation that a wrongful death action is a "separate and independent" cause of action from Andrea's personal injury action, although true, is immaterial. Op. p. 744. The Boullts are not attempting to "stack" their policies covering Andrea's wrongful death on top of policies covering Andrea for personal injury damages. They are attempting to "stack" two UM policies providing coverage for Andrea's wrongful death. However, the anti-stacking statute makes no exception for wrongful death damages.
Further, it is immaterial that "separate premiums had been charged to and paid by different insureds for each of the separate UM policies." Op. at p. 744. Of course, it is frequently the case that there are separate polices, separate premiums and separate insureds under policies providing UM coverage, yet the anti-stacking statute clearly applies anyway.
Further, it is immaterial that the parents are divorced. Op. at p. 744. The anti-stacking statute does not depend on the marital status of the claimants, but focuses instead on the UM coverage available to the insured, Andrea. As one commentator has stated:
Decisions have correctly focused the stacking issue in wrongful death cases on whether the deceased, as the injured person, was occupying an auto that he did not own at the time of the accident. If the deceased was limited to one coverage because he was occupying his own auto, claimants for his wrongful death likewise must share one policy limit.
William Shelby McKenzie and H. Alston Johnson, III, Louisiana Civil Law Treatise, Insurance Law and Practice, 2nd Ed., § 123, p. 303-04. For example, if Andrea had been a passenger in her father's car, under La. R.S. 22:1406(D)(1)(c)(i), the parents would have only been entitled to recover under one uninsured motorist policy. The same result occurs here where Andrea was a passenger in a non-owned vehicle.
Further, it is immaterial that "each parent suffered his and her own injuries although arising from a single occurrence, i.e., Andrea's death." Op. at p. 744. It is only because Andrea was an insured under *748 each of the Boullt's policies that the policies provide coverage for Andrea's wrongful death. The fact that this is a wrongful death action does not transform the parents into the "insured" under the antistacking statute. That they were each an insured under their respective policies[2] likewise does not make them the "insured" under the statute.
Because clearly Andrea is the "insured" referred to in La. R.S. 22:1406(D)(1)(c)(i), the parents are prohibited from each recovering under their respective UM policies.[3] Therefore, I respectfully dissent.
NOTES
[*] Marcus, J., not on panel. See Rule IV, Part 2, § 3.
[1] Coincidently, State Farm was the insurer under both UM policies.
[2] The 1996 second edition of the McKENZIE & JOHNSON treatise deleted this quote. The treatise now states: "If the deceased was limited to one coverage because he was occupying his own auto, claimants for his wrongful death likewise must share one policy limit." McKENZIE & JOHNSON, § 123.
[3] Left unanswered by State Farm's argument are several question all of which underscore its position as untenable in law. For example, who determines which parent gets paid? Who determines which insurance policy is executed? If there are separate insurers, who determines which company pays? If the policies provided for different amounts of coverage, who would choose the coverage limit and how would it be divided between the parties? How can the insurer make a check payable to a parent/claimant who is not an insured under the policy? The absence of laws answering these basic questions show that the Legislature never intended such a result under the anti-stacking statute.
[4] Our holding today is consistent with the jurisprudence from our sister states. See, e.g., Kline v. American States Ins. Co., 924 P.2d 1150 (Colo.App.1996); South Carolina Ins. Co. v. Kokay, 398 So.2d 1355 (Fla.1981).
[1] As noted above, in the case of a fatal injury sustained by a person insured under the policy, all of the tort victim's statutory beneficiaries are entitled to recovery of survivorship and wrongful death damages up to the limits of the UM coverage.
[2] The anti-stacking statute probably was designed to cover less unique situations, but the statute clearly applies here.
[1] See Salter v. State Farm Mut. Auto. Ins. Co., 520 So.2d 877 (La.App. 3 Cir.1987) (holding that "the party referred to in the clear language of LSA-R.S. 22:1406D(1)(C) is the injured party who has sustained bodily injury while occupying an automobile not owned by that injured party," not the children of the decedent); Sheppard v. State Farm Ins. Co., 614 So.2d 208 (La.App. 3 Cir.1993) (holding that a divorced parent of a deceased child may chose to recover wrongful death damages under either her UM policy or her ex-husband's UM policy, which ever is more favorable, but is prohibited by the anti-stacking statute from recovering under both policies); Vincent v. State Farm Mut. Auto Ins. Co., 526 So.2d 818 (La.App. 3 Cir.1988) (holding that the married parents of their deceased son could not stack two separate UM policies under which they and their son were each insureds because the anti-stacking statute reference "to `the insured' contemplates the person who suffers the bodily injury or bodily injury resulting in death"); Schwankhart v. Louisiana Dept. of Transp. and Development, 94-0735 (La.App. 4 Cir. 11/30/94), 646 So.2d 1242 (holding that divorced parent could not stack their separate UM policies for the wrongful death of their son because the "insured" referred to in the anti-stacking statute is the person who suffers bodily injury or bodily injury which results in death).
[2] The "insured" for purposes of uninsured motor vehicle coverage under each of the State Farm policies is defined as "the person or persons covered by uninsured motor vehicle coverage" which includes "the first person named in the declarations" and "their relatives" and "any person entitled to recover damages because of bodily injury to an insured..."
[3] The majority's reliance on jurisprudence from other states to support their position is misplaced. Op. at p. 745, n. 4. The Colorado statute at issue in Kline v. American States Insurance Co., 924 P.2d 1150 (Colo.App.1996) was not an anti-stacking statute, but instead defined whether the automobile involved in the accident was an "underinsured motor vehicle." Likewise, the Florida statute at issue in South Carolina Ins. Co. v. Kokay, 398 So.2d 1355, 1357 (Fla.1981) was an anti-stacking statute, but the statute contained an important exception that "[t]his section shall not apply to reduce the coverage available by reason of insurance policies insuring different named insureds" and each parent had a policy in which he or she, respectively, was the named insured.