JiLEON A. CANNIZZARO, JR., Judge.
In this personal injury action arising out of a motor vehicle accident, the defendant, Allstate Insurance Company (“Allstate”), seeks review of the denial of its motion for summary judgment on issues involving uninsured/underinsured motorist (“UM”) coverage under an umbrella policy issued to the owner of a vehicle involved in the accident.
FACTS AND PROCEDURAL HISTORY
Victor Ordon, a Louisiana domiciliary, became intoxicated at a local bar and rented his automobile to Jesse Banks for ten dollars. Mr. Banks, however, was only fourteen years old at the time of the exchange. While under the influence of marijuana, Mr. Banks drove Mr. Ordon’s car *1065 west on I — 10 at an extremely high rate of speed and subsequently lost control of the vehicle in the elevated curve near the Elysian Fields Avenue exit. After striking the guardrails on both sides of the highway, the vehicle came to rest in the middle lane of the interstate.
Richard Fletcher, who was driving Elizabeth Petti’s vehicle, with Ms. Petti, Donna Fletcher and Dorothy Pearce as passengers, crested the elevated and curved portion of the 1-10 at that same location. He suddenly and unexpectedly 1 encountered numerous stopped and damaged vehicles in the middle of the interstate involved in a large pile up that was triggered by Mr. Banks. Mr. Fletcher, unable to stop, struck one of the vehicles ahead of him. The Ordon vehicle was uninsured.
Ms. Petti and Ms. Pearce, domiciliaries of Florida, filed the instant action (# 2001-4694) against Allstate[1], Ms. Petti’s UM insurer pursuant to primary and personal umbrella policies issued and delivered by Allstate to Ms. Petti in Florida. Shortly thereafter, Mr. and Mrs. Fletcher, also Florida domiciliaries, filed a separate action (#2001-12237) against Allstate arising out of the same accident. The suits were consolidated.
The Fletchers filed a motion for partial summary judgment, arguing that the UM laws of the State of Louisiana rather than those of the State of Florida govern the UM issues in the case, and that Ms. Petti’s umbrella policy provided UM coverage that was a continuation of the coverage provided by her primary policy. Allstate, too, filed a motion for partial summary judgment arguing that Florida UM law governed the parties’ rights and obligations and that its umbrella policy issued to Ms. Petti did not afford UM coverage to any of the plaintiffs or, alternatively, that it covered only Ms. Petti, the insured.
Following a hearing on both motions for summary judgment, the trial court rendered judgment granting the Fletchers’ motion for summary judgment on the issues that Louisiana UM law governed the primary and umbrella policies issued to Ms. Petti, and that the policies provided UM coverage to all of the occupants of the IsPetti vehicle — Ms. Petti, Ms. Pearce and the Fletchers. The trial court denied Allstate’s motion for summary judgment on those same two issues.[2]
Allstate filed the instant writ application seeking review of the trial court’s denial of its motion for partial summary judgment.[3]
Included in the writ application are copies of the two Allstate policies issued to Ms. Petti covering her on the date of the accident, namely, an auto liability policy and the $1 million personal umbrella poli *1066 cy. Ms. Petti was listed on both policies as having an address in Bradenton, Florida. Also included in the writ application is a copy of an Allstate auto liability policy issued to Mr. and Mrs. Fletcher that covered them on the date of the accident. The Fletchers had minimal coverage under the policy and were listed as having an address in Bradenton, Florida.
STANDARD OF REVIEW
Appellate courts review the grant or denial of a motion for summary judgment de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230. A summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
| ¿Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 2000-2507, p. 2 (La.12/08/00), 775 So.2d 1049, 1050.
La. C.C.P. art. 966(C)(2) provides that where the party moving for summary judgment will not bear the burden of proof at trial, his burden does not require him to negate all essential elements of the adverse party’s claim, but rather to point out to the court an absence of factual support for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law. Id.
DISCUSSION

Applicable State Law

The trial court denied Allstate’s motion for summary judgment on the issue that Florida UM law applies rather than Louisiana UM law, La. R.S. 22:680[4]. All of the policies in the instant case were issued and delivered in Florida to Florida domiciliar-ies. The Louisiana Courts of Appeal are divided on the approach to determine which state UM law applies in situations where an out-of-state resident involved in an accident in Louisiana asserts a UM claim against an insurance policy issued and delivered outside of Louisiana. The Fourth and Fifth Circuits decide the issue using the “automatic application” of La. R.S. 22:680(l)(a)(iii), | ¿while the First, Second and Third Circuits utilize a “choice of laws” approach, i.e. the courts analyze the interests or contacts of both states in deciding which law to apply.
The Louisiana uninsured motorist statute, La. R.S. 22:680, provides in pertinent part:
The following provisions shall govern the issuance of uninsured motorist coverage in this state:
(l)(a)(i) No automobile liability insurance ... shall be delivered ... in this state ... unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy ... for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles ... however, the coverage required *1067 under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only coverage, in the manner provided in Item (l)(a)(ii) of this Section. In no event shall the policy limits of an uninsured motorist policy be less than the minimum liability limits required under R.S. 32:900, unless economic-only coverage is selected as authorized herein.
(ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance.
(iii) This Subparagraph and its requirement for uninsured motorist coverage shall apply to any liability insurance covering any accident which occurs in this state and involves a resident of this state.
(Emphasis added).
In Austin v. Western World Ins. Co., 99-2541 (La.App. 4 Cir. 5/17/00), 765 So.2d 390, the plaintiffs, two New York residents traveling on 1-10 from Louis Armstrong International Airport to New Orleans in a cab owned and operated by a Louisiana resident were injured when the cab rear-ended a tow truck operated by a Louisiana resident. The trial court granted the plaintiffs’ motion for summary | judgment against three New York UM insurers, holding that La. R.S. 22:1406(D)(1)(a)(iii) required the court to apply Louisiana law to the UM coverage issues. Under New York law, the UM insurers would have been entitled to an “offset” for the amount of liability insurance held by the tortfea-sor, thereby reducing the limits of the UM policies. Louisiana’s UM statute, however, did not allow a reduction. One insurer appealed, arguing that the general conflict of laws provisions in La. C.C. art. 3515 and 3537 required the application of New York law.
In affirming the trial court, we cited La. C.C. art. 14, which states:
Unless otherwise expressly provided by the law of this state, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV of this Code.
We also noted that the Louisiana Legislature adopted La. C.C. art. 14 at the same time as Book IV of the Civil Code concerning conflict of laws. Official Comment (b) to La. C.C. art. 14 states in pertinent part that:
[T]he provisions of Book IV are not intended to supersede more specific choice-of-law rules contained in other Louisiana statutes, such as the Insurance Code (see La. R.S. 22:611 et seq.).... When applicable those rules, being more specific, should prevail over the provisions of Book IV.
Because La. R.S. 22:1406(D)(l)(a)(iii) was a specific choice-of-law rule in the Insurance Code, we concluded that it prevailed over the general conflict of laws provisions in La. C.C. arts. 3515 and 3537, the same provisions that Allstate argues are applicable to the instant ease.
Similarly, in Crutchfield v. Landry, 2000-0070 (La.App. 4 Cir. 1/31/01), 778 So.2d 1249, a vehicle driven by a Louisiana resident struck and killed a commercial truck driver who was securing cargo on the side of his truck. The |7truck driver was a resident of California, and his employer had purchased a policy in Georgia from Lexington Insurance Company. The trial court granted the plaintiffs’ motion for summary judgment that the Lexington policy provided UM coverage. Lexington sought review, arguing that the trial court had erred by applying Louisiana’s UM law to an insurance policy that was neither negotiated, issued nor delivered in Louisi *1068 ana, and by failing to enforce the policy as written — to exclude UM coverage for the accident. We affirmed, citing our prior decision in Austin, and noting:
Louisiana’s interest in regulating awards to victims in this state’s highways, in protecting persons traveling on its highways from damage caused by uninsured/underinsured motorist, and in equally assessing the burden of awards to all culpable parties outweighs those of Georgia. Furthermore, a contrary holding would undercut and weaken Louisiana’s long standing policy of requiring uninsured/underinsured motorist coverage to protect victims who travel on this state’s highways and are injured by Louisiana residents.
Crutchfield, 2000-0070, p. 6, 778 So.2d at 1252.
In the instant case, the alleged tortfeasors were residents of Louisiana. Accordingly, pursuant to La. R.S. 22:680(l)(a)(iii), the trial court correctly held that Louisiana UM law applies to determine UM coverage under both of Ms. Petti’s Allstate policies. Ms. Petti’s primary policy contains UM coverage in the same amounts as the bodily injury coverage — $100,000 per person, $800,000 per accident (occurrence). That is in accord with the requirements of La. R.S. 22:680(l)(a)(i). However, Ms. Petti did not reject UM coverage on her umbrella policy in accordance with La. R.S. 22:680(l)(a)(i) and (ii). Therefore, in light of La. R.S. 22:680(l)(a), as interpreted by this court, Ms. Petti’s $1 million dollar umbrella policy is deemed to provide UM coverage in the same amount or amounts |sas the coverage it provides for bodily injury. Thus, Allstate’s assignments of error as to this issue are without merit.

Coverage under the umbrella policy

Allstate argues that even if Louisiana UM law applies to Ms. Petti’s umbrella policy, it only provides UM coverage to her, because the Fletchers and Ms. Pearce do not qualify as insureds under the policy. Allstate cites the specific policy provision in Ms. Petti’s umbrella policy, defining “insured person.” The policy states:
General Provisions
Definitions Used In This Policy
1. “You” or “your” means the person named on the Policy Declarations as the insured and that person’s resident spouse.
2. “Insured person” means:
a) You, and any other person who is named on the Policy Declarations;
b) any person related to you by blood, marriage or adoption who is a resident of your household; or
c) any dependent person in your care, if that person is a resident of your household, (emphasis in original).
Ms. Petti is the only person named on the declarations page of the umbrella policy. There are no allegations that the Fletchers or Ms. Pearce are related to Ms. Petti by blood, marriage or adoption, or that any of them is a dependent person in her care, much less a resident of her household.
The Fletchers argued in support of their motion for partial summary judgment that Ms. Petti’s umbrella policy was a continuation of her primary policy, citing Gentry v. Meade, 99-1030 (La.App. 4 Cir. 4/19/00), 767 So.2d 60. The Fletchers’ reliance on the Gentry case, however, is misplaced.
IgThe issue in Gentry was whether an injured guest passenger, who was personally protected by layers of primary and excess UM coverage, was compelled to choose only one of his layers of UM coverage, be it primary, excess or umbrella in light of the anti-stacking provision of La. *1069 R.S. 22:1406(D)(l)(c)[5]. In answering that question affirmatively, we stated that “[a]n umbrella policy is nothing more than a continuation of the coverage provided by the primary policy. The cause of this contract is for it to work in unison with the primary policy by covering losses above and beyond that of the primary policy, up to the limits of the umbrella policy.” Gentry, 99-1030, pp. 5-6, 767 So.2d at 63. Yet, we also emphasized that “[s]ince the law requires umbrella UM coverage to be offered, which will provide coverage to an insured who sustains bodily injury while occupying a non-owned vehicle, .... then it must be understood that the insured will receive those benefits.” (Emphasis added). Gentry, 99-1030, p. 5, 767 So.2d at 63. In the instant case, the Fletchers, unlike the injured guest passenger in Gentry, are not “insureds” under the Allstate umbrella policy issued to Ms. Petti.
In Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191, a vehicle owned and operated by Mr. Magnon was rear-ended by a vehicle owned and operated by an underinsured/uninsured motorist. Mr. Magnon sued his personal UM insurer, State Farm, and Vigilant Insurance Co., which provided a $1 million commercial general liability policy to Mr. Magnon’s employer, the local law firm of Phelps Dunbar, L.L.P. Mr. Magnon was in the course and scope of his employment as an investigator with Phelps Dunbar at the time of his accident. The Louisiana Supreme Court found that Mr. Magnon was not an “insured” under the |10commercial general liability policy Vigilant issued to Phelps Dunbar, and thus not entitled to UM coverage under that policy. The Court reversed the trial court’s denial of Vigilant’s motion for summary judgment, stating:
Although Louisiana’s public policy strongly favors UM coverage and a liberal construction of the UM statute, it is well-settled that a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy. (Numerous citations omitted). In other words, a plaintiff must be an “insured” under auto liability coverage to be entitled to UM coverage.
[[Image here]]
As such, any determination of whether a plaintiff is entitled to UM benefits must follow a determination that the plaintiff is an insured for purposes of auto liability insurance coverage. (Numerous citations omitted).
Magnon, 98-2822, pp. 5-6, 739 So.2d at 196 (Emphasis added).
After setting forth the basic principle that the plaintiff must be an insured for purposes of auto liability insurance coverage in order for him to be entitled to UM coverage, the Court proceeded to examine the policy to determine whether the plaintiff was an insured under its terms. The Court set forth basic principles of insurance policy interpretation as follows:
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass’n v. Interstate Fire & Gas. Co., 93-0911 (La.1/14/94), 630 So.2d 759. The judicial responsibility in interpreting insurance contracts is to determine the parties’ common intent. La. C.C. art. 2045.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to *1070 restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Louisiana Ins. Guar. Ass’n, 630 So.2d at 763 (collecting cases). Absent a conflict with statutory 171 provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Id.
Yet, if the policy wording at issue is clear and unambiguously expresses the parties’ intent, the insurance contract must be enforced as written. La. C.C. art 2046. When the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. Louisiana Ins. Guar. Ass’n, 630 So.2d at 764.
Magnon, 98-2822, pp. 6-7, 739 So.2d at 196-197.
The language of the Allstate personal umbrella policy issued to Elizabeth Petti is clear and unambiguous insofar as it defines an “insured person” under the policy. Ms. Petti is the only person named as the insured on the Policy Declarations. Donna Fletcher, Richard Fletcher or Dorothy Pearce would fall under the definition of an “insured person” according to the definition thereof in the policy only if he or she was Ms. Petti’s resident spouse, a resident relation to her by blood, marriage or adoption, or a resident dependent person in her care. No evidence has been submitted that either Mr. or Mrs. Fletcher or Ms. Pearce is Ms. Petti’s resident spouse, resident relation to her by blood, marriage or adoption, or resident dependent person in her care — and it is not argued that any of them falls into one of those categories.
An insurance contract is construed as a whole. Succession of Fannelly v. Lafayette Ins. Co., 2001-1355, pp. 4-5 (La.1/15/02), 805 So.2d 1134, 1137, citing La. C.C. art.2050 and Peterson v. Schimek, 98-1712 (La.03/02/99), 729 So.2d 1024, 1029. Each provision in the contract must be interpreted in light of the other provisions; one provision of the contract should not be construed separately at the expense of disregarding other provisions. Id.
|1?The policy’s definition of an “insured person” clearly shows that the parties’ common intent was that Allstate would pay damages that an insured person becomes legally obligated to pay for occurrences arising out of the insured person’s activities, including the insured person’s act of permitting another to use the insured person’s land vehicle. The only insured person here is Elizabeth Petti. Thus, Ms. Petti would be covered under the policy should she be held liable for damages arising out of her permitting Mr. Fletcher to drive her auto. However, there are no allegations that .Ms. Petti is at fault or should be held liable for damages on the ground that she let Mr. Fletcher drive her auto.
Because the umbrella policy is deemed to afford UM coverage to Ms. Petti as an insured person, she is covered for any bodily injury she sustained that was caused by the acts of the tortfeasor or tortfeasors in the instant case. That Mr. Fletcher was a permissive user of Ms. Petti’s vehicle does not make him an “insured person” under the policy so that he too is covered by the UM coverage the policy is deemed, to provide to insured persons. Nor does the fact that Mr. Fletcher was a permissive user of Ms. Petti’s vehicle make Ms. Fletcher or Ms. Pearce an insured person under the policy such that either would be entitled to the UM coverage the policy is deemed to afford to insured persons.
In the instant case, because there are no allegations that Ms. Petti is in any way legally obligated for injuries suffered by *1071 Mr. Fletcher, Mrs. Fletcher or Ms. Pearce, and because none of them is an insured person under Ms. Petti’s personal umbrella policy, there is no coverage, UM or otherwise, available to the Fletchers or Ms. Pearce under Ms. Petti’s umbrella policy.
Lo,CONCLUSION
Accordingly, the writ application is granted and the judgment of the trial court is reversed insofar as it denied Allstate’s motion for summary judgment as to whether the personal umbrella policy Allstate issued to Elizabeth Petti provided UM coverage to Richard Fletcher, Donna Fletcher and/or Dorothy Pearce. The judgment of the trial court is affirmed in all other respects and the case is remanded for further proceedings.
WRIT GRANTED; REVERSED IN PART, AFFIRMED IN PART AND REMANDED.

. In addition to Allstate, Ms. Petti and Ms. Pearce also sued Mr. Ordon; Danny Banks, the father of Jesse Banks; Mr. Fletcher; and State Farm Insurance Company, Ms. Pearce's UM insurer.

. The judgment also granted in part Allstate’s motion for summary judgment and denied in part the plaintiffs’ motion for summary judgment, decreeing that neither Allstate's primary nor umbrella policy issued to Ms. Petti provided for payment of punitive or exemplary damages. That part of the trial court judgment is not at issue in the present writ application.

. After the trial court designated and certified the judgment granting the Fletchers' motion for partial summary judgment as a final ap-pealable judgment pursuant to La. C.C.P. art. 1915 for purposes of an immediate appeal, Allstate filed two devolutive appeals (one in each of the consolidated cases). In the interest of judicial economy, we have chosen to exercise our supervisory jurisdiction to consider the issues raised in Allstate's writ application.

. La. R.S. 22:680 was redesignated from La. R.S. 22:1406(D) by Acts 2003, No. 456, § 3.

. La. R.S. 22:1406(D)(1)(c) is now designated as La. R.S. 22:680(l)(c).