JOAN BERNARD ARMSTRONG, Chief Judge.
hOn the application of USAA Casualty Insurance Company (USAA), we grant certiorari in order to consider the validity of a judgment of the trial court granting Lafayette Insurance Company’s motion for summary judgment on the issue of ranking of UM insurance coverage. For the reasons that follow, we affirm the summary judgment.
On October 24, 2002, Thomas J. Halver-son, Sr. (plaintiff) was rear ended while driving a Chevrolet Tahoe, which was co-leased to him and his employer, E.J. Hal-verson & Associates, Inc.[1]. Plaintiff sued the driver of the vehicle that hit him, settled for policy limits and filed this suit against USAA and Lafayette Insurance Company (Lafayette), both of whom provided UM coverage on the Tahoe. USAA provided $500,000.00 of coverage under an automobile insurance policy, while Lafayette provided $1,000,000.00 coverage pursuant to the “hired auto” clause of a commercial general insurance policy.
USAA and Lafayette filed cross-motions for summary judgment on the issue of ranking of the policies for purposes of Louisiana’s anti-stacking statute. La. R.S. 22:680(l)(c)(ii)(aa). USAA argued that under Louisiana jurisprudence, if 12there is more than one UM policy available on a non-owned vehicle in which the plaintiff is an occupant, then all of the available UM policies are primary. Lafayette, on the other hand, maintains that USAA’s policy is primary because it is an automobile liability policy, issued to the plaintiff, individually, and which names the plaintiff as an insured and specifically lists the Tahoe as a scheduled vehicle. Lafayette contends that USAA’s policy primes Lafayette’s policy, which is a policy of general commercial insurance and provides UM insurance to non-specified, non-owned vehicles and then only under an endorsement to that policy. Furthermore, Lafayette argues that because USAA is the primary insurer in this instance and it is an excess insurer, the policies are non-current, meaning that in order for Lafayette’s *200 policy to take effect, USAA’s UM coverage must first be exhausted. Furthermore, Lafayette argues that the “other insurance”[2] clause of its policy indicates its coverage is excess, not primary.
The trial court granted Lafayette’s motion finding that USAA provided primary UM coverage. We grant USAA’s writ application to consider its claim that the judgment was incorrect as to the ranking of UM coverages.
Appellate courts review grants of summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate, ie., whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. Champagne v. Ward, 03-2311, p. 4 (La.1/19/05), 893 So.2d 773, 776. The mover bears the burden of Lproof. La. C.C.P. art. 966(C)(2). If the mover meets this initial burden, the burden then shifts to the other party to present factual support adequate to establish that he will be able to satisfy the evidentiary burden at trial. Richard v. Hall, 03-1488, p. 5 (La.4/23/04), 874 So.2d 131, 137. Thereafter, if the non-moving party fails to meet this burden, there is no genuine issue of material fact and the mover is entitled to summary judgment as a matter of law. Id. The Supreme Court has recognized that a “genuine issue” is a “triable issue,” an issue in which reasonable persons could disagree. Jones v. Estate of Santiago, 03-1424, p. 6 (La.4/14/04), 870 So.2d 1002, 1006 (citing Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). A “material fact” is one as to which “its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery.” Id.
In Petti v. Ordon, 2004-1659 (La.App. 4 Cir. 11/10/04), 888 So.2d 1064, writ denied, 04-2981 (La.2/25/05), 894 So.2d 1150, this Court noted:
An insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Civil Code. Louisiana Ins. Guar. Ass’n v. Interstate Fire & Cas. Co., 93-0911 (La.1/14/94), 630 So.2d 759. The judicial responsibility in interpreting insurance contracts is to determine the parties’ common intent. La. C.C. art. 2045.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Louisiana Ins. Guar. Ass’n, 630 So.2d at 763 (collecting cases). Absent a conflict with statutory provisions or public policy, insurers, like other individuals, are entitled to limit their liability and to impose and to enforce reasonable conditions upon the policy obligations they contractually assume. Id.
Yet, if the policy wording at issue is clear and unambiguously expresses the parties’ intent, the insurance contract must be enforced as written. La. C.C. *201 art. 2046. When |4the language of an insurance policy is clear, courts lack the authority to change or alter its terms under the guise of interpretation. Louisiana Ins. Guar. Ass’n, 630 So.2d at 764.
Petti, at pp. 10-11, 888 So.2d at 1069-70 citing Magnon v. Collins, 98-2822, pp. 5-7 (La.7/7/99), 739 So.2d 191, 196.
With one exception, Louisiana’s anti-stacking statute prohibits insureds from combining or stacking UM benefits either interpolicy or intrapolicy. La. R.S. 22:1406(D)[3] provides, in pertinent part:
(l)(c)(i) If the insured has any limits of uninsured motorist coverage in a policy of automobile liability insurance, in accordance with the terms of Subsection D(l), then such limits of liability shall not be increased because of multiple motor vehicles covered under said policy of insurance and such limits of uninsured motorist coverage shall not be increased when the insured has insurance available to him under more than one uninsured motorist coverage provision or policy; provided, however, that with respect to other insurance available, the policy of insurance or endorsement shall provide the following:
(ii) With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, resident spouse, or resident relative, the following priorities of recov-
ery under uninsured motorist coverage shall apply:
(aa) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
(bb) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
Under the first paragraph of the statute, an insured with insurance available to him under more than one UM policy is limited to recovery under one policy and may not combine or stack the coverage provided under those policies. Under the second paragraph, an exception to the stacking prohibition is permitted if: (1) the | ¡Injured party is occupying' an automobile not owned by him; (2) the UM coverage on the vehicle in which the injured party was an occupant is primary; and (3) the primary UM coverage is exhausted due to the extent of damages. In that instance, the other uninsured motorist coverage available to the injured occupant is considered as excess insurance, under which the injured occupant may recover. Boullt v. State Farm Mut. Auto. Ins. Co., 99-0942, p. 7 (La.10/19/99), 752 So.2d 739, 743[4]. *202 Where no primary coverage exists on the vehicle occupied by the injured party, the exception to the stacking prohibition does not apply. Senegal v. Faul, 598 So.2d 686, 689 (La.App. 3 Cir., 1992).
USAA argues that the trial court’s ruling ignores Louisiana jurisprudence, which supports its argument that both of the insurance policies in this case provide primary coverage on a pro rata basis[5]. USAA notes that primary coverage is the coverage that is applicable to the vehicle in which the person was injured. If, however, that vehicle has more than one UM policy on it, then for purposes of the statute, all such policies are primary, citing Pardue v. Dean, 515 So.2d 543 (La.App. 1 Cir.1987) and Capone v. King, 467 So.2d 574 (La.App. 5 Cir.1985). Neither Pardue nor Capone offers support for USAA’s argument.
In Pardue, the First Circuit concluded that where a plaintiff is injured while occupying an owned automobile, the anti-stacking statute does not prohibit recovery under more than one policy covering the involved vehicle. In Pardue, the plaintiff was injured while occupying an owned automobile upon which there was 1 fia policy of insurance providing UM coverage. The plaintiff alleged that the involved automobile was also covered under a business automobile policy issued to his employer. The court concluded that if plaintiff could prove that his automobile was also covered under the business policy, he could recover under both UM policies without violating the anti-stacking prohibition. In this case, unlike Pardue, there is no dispute as to coverage, only ranking as to primary versus excess. Additionally, Pardue did not involve a non-owned vehicle.
In Capone, the plaintiff, a guest passenger in the host vehicle, sustained injuries in an automobile accident caused by the fault of an uninsured motorist who struck the host vehicle. Because the tortfeasor was uninsured, the plaintiff filed suit against Allstate Insurance Company (Allstate), the host driver’s UM insurer, and Aetna Insurance Company (Aetna), the insurer of the host driver’s employer, because the host driver was en route to a work-related function. Allstate had UM coverage in the amount of $100,000.00, whereas Aetna provided UM coverage for the host driver’s vehicle in the amount of $500,000.00. Additionally, the host driver’s employer held $5 million dollars in UM coverage under an umbrella liability policy issued by Chicago Insurance Company (Chicago). Furthermore, the plaintiff was also insured by a policy issued to her employer by Hartford Accident and Indemnity Company (Hartford). The Fifth Circuit held that the three policies, (i.e., Allstate, Aetna, and Chicago) containing UM coverage for the host vehicle were primary under La. R.S. 22:1406 because each provided coverage for the vehicle the plaintiff was occupying at the time of the accident. The reviewing court further held that any attempt by these three insurers to seek contribution from Hartford would not be favored unless the plaintiffs damages exceeded the primary coverages on the vehicles involved in the subject accident. See La. R.S. |722:1406(D)(l)(c)(ii); Capone, 467 So.2d at 580. In Capone, the court essentially recognized Hartford’s status as an excess insurer by virtue of its umbrella policy and refused to place it on equal footing with the other insurers. However, because Capone does not contain an analysis of the respective insurance policies, it offers no insight into the Court’s basis for deciding that three of the insurers were primary carriers. Moreover, there is no way to *203 determine how the trial court ranked the policies.
USAA next argues that when two policies provide UM coverage on a vehicle in which the plaintiff was an occupant, the proper method used to allocate the coverage between the two policies is to examine the respective “other insurance” clauses.
Under USAA’s “other insurance” clause, the policy reads:
If there is other applicable insurance for uninsured motorist coverage or underin-sured motorist coverage available under one or more policies or provisions of coverage:
* * *
B. Any insurance we provide with respect to a vehicle you do not own will be excess over any collectible insurance unless (emphasis supplied) that vehicle is:
1. A loaner vehicle; or
2. A temporary substitute vehicle or rental private passenger automobile on which you ... have not purchased other applicable insurance, (emphasis supplied).
C. If the coverage under this policy is provided
1. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.
2. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is |Rthe proportion that our limit of liability bears to the total of all applicable limits of liability of coverage provided on an excess basis.
Lafayette maintains that Section B(2) of USAA’s policy mandates primary coverage because the plaintiff did not purchase other applicable insurance. USAA counters Lafayette’s position by arguing that the plaintiff did in fact purchase other insurance — the Lafayette policy. However, the “other insurance” provision of Lafayette’s policy reads:
The OTHER INSURANCE condition is replaced by the following:
a. This insurance shall be excess over any primary uninsured motorists insurance specifically covering the “hired auto” or “non-owned auto”, (emphasis supplied)
b. Whether or not there is collectible primary uninsured motorists insurance, the total limit available for recovery of damages from all uninsured motorists insurance coverages or policies written on an excess basis shall be the limit of the one such insurance coverage or policy having the highest limit. We will pay our pro rata share of that limit.
USAA argues that paragraph (b) of the Lafayette policy’s “other insurance” provision provides that Lafayette is to share UM coverage with USAA on a pro rata basis. However, paragraph (b) states only that if there is more than one excess policy, Lafayette will pay pro rata. Considering the verbiage of both policies, it appears USAA’s coverage is primary; that being so, there is only one excess policy, consequently paragraph (b) is not triggered.
Based upon the wording of the policies, the trial judge did not err in granting partial summary judgment in favor of Lafayette.
For the foregoing reasons, we affirm the judgment of the trial court.
*204 WRIT GRANTED; SUMMARY JUDGMENT AFFIRMED.
JONES, J., concurs in the denial of the writ.

. Plaintiff is the owner of E.J. Halverson & Associates, Inc.

. There are three basic types of "other insurance” clauses: pro rata, excess and escape. A pro rata clause provides for a sharing of responsibility among the insurers. Excess clauses provide that the coverage of the policy will be excess over other valid and collectible insurance so that the insurer will have no obligation to pay until the first layer of "pri-maiy” coverage is exhausted. An escape clause provides that the coverage is applicable only if there is no other coverage available to the insured. See generally Shaffer v. Stewart Const. Co., Inc., 2003-0971 (La.App. 5 Cir. 1/13/04), 865 So.2d 213, writ den. 04-0420 (La.4/2/04), 869 So.2d 886.

. La. R.S. 22:1406 was amended by 2003 La. Acts, No. 456, §§ 1 and 2, and was re-designated as La. R.S. 22:680 by § 3 of that act. Because the facts underlying this lawsuit occurred before that revision and re-designation, the former statutory provisions and designation are used herein.

. In Boullt, the Louisiana Supreme Court allowed recovery by each of two divorced parents under their respective policies for the wrongful death of their daughter, holding that such recovery did not violate the state’s anti-stacking statute. The Boullt court viewed recovery under both policies not as stacking, but as separate recoveries for individual insureds under separate policies covering the same accident. "The question of 'stacking' only arises once it is determined that the person seeking to cumulate benefits on two or more uninsured motorist coverages is an insured under the terms of those policies." Boullt, 99-0942 at p. 7, 752 So.2d at 743, quoting Seaton v. Kelly, 339 So.2d 731, 735 (La.1976).

. See footnote 2, infra.