Erika BJORNSON, By and Through her guardian and parent Jan BJORNSON, and Jan Bjornson, individually, Plaintiffs and Appellees,

v.

GUARANTY NATIONAL INSURANCE COMPANY, Defendant and Appellant,

and

Farmers Insurance Exchange, Defendant.

Civ. No. 950062.

Supreme Court of North Dakota.

Oct. 31, 1995.

Timothy A. Priebe of Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, for plaintiffs and appellees.

Michael J. Maus of Howe, Hardy, Galloway & Maus, P.C., Dickinson, for defendant and appellant.

NEUMANN, Justice.

Guaranty National Insurance Company (Guaranty) appealed from a district court judgment awarding Erika Bjornson $30,000 in damages under an automobile liability insurance policy written by Guaranty. We conclude Erika was not entitled to receive both Uninsured Motorist (UM) and Underinsured Motorist (UIM) benefits under the policy. Accordingly, we affirm the $20,000 award of UIM coverage and reverse the $10,000 award of UM coverage.

The parties have stipulated to the facts in this case. Jeff Bjornson, Erika's father, was killed in an automobile accident in Arizona while he was riding in a car driven by Rodger Rosaaen. Rosaaen's vehicle was insured by Old Hickory Casualty Insurance Company (Old Hickory) and carried the Arizona minimum statutory liability limits of $15,000 per person and $30,000 per accident. Old Hickory settled with multiple claimants, collectively paying them the $30,000 liability limits under Rosaaen's policy. In that settlement Erika and her mother, Jan Bjornson, each received $5,000.

At the time of the accident, Jeff had an automobile liability insurance policy with Guaranty, under which he carried both UM and UIM coverage. Erika, who incurred damages in excess of $25,000 as the result of her father's death, sued Guaranty for benefits under both the UM and UIM provisions of Jeff's policy. The trial court awarded Erika $20,000 of UIM benefits and an additional $10,000 of UM benefits under the policy.

On appeal, Guaranty asserts Erika is entitled to benefits under the UIM provisions, but not the UM provisions, of Jeff's policy. Erika asserts the trial court correctly construed the insurance policy as providing both UM and UIM coverage, because Rosaaen's vehicle fits within the policy's definitions of both an uninsured motor vehicle and an underinsured motor vehicle. Erika claims she is therefore entitled to coverage under both provisions, because the policy does not explicitly preclude a claimant from receiving both UM and UIM benefits for a single accident.

■ On appeal, we will independently examine and construe an insurance policy to determine whether the trial court erred in its construction. *Sellie v. N.D. Ins. Guar. Assoc.*, 494 N.W.2d 151 (N.D.1992). The construction of a written insurance contract is a question of law which is fully reviewable by this court. *State Farm v. LaRoque*, 486 N.W.2d 235 (N.D.1992). In interpreting a contract we look first to its language and, if the intent is apparent from its face, there is no room for construction. *Stuhlmiller v. Nodak Mutual Ins. Co.*, 475 N.W.2d 136 (N.D. 1991).

■ The definitions of an uninsured and an underinsured motor vehicle in Jeff's policy with Guaranty unambiguously preclude an insured from receiving both UM and UIM benefits when the tortfeasor's vehicle, although carrying some liability insurance protection, falls within the definition of an uninsured motor vehicle. The relevant language provides:

"*Part III—Uninsured Motorists*

    \*    \*    \*    \*    \*    \*

"(3) '*Uninsured motor vehicle*' means a motor vehicle which is:

    \*    \*    \*    \*    \*    \*

"(B) insured by a liability bond or policy at the time of the accident, but which provides bodily injury liability limits less than the minimum bodily injury liability limits required by the financial responsibility law of the state in which your insured car is principally garaged.

    \*    \*    \*    \*    \*    \*

"*Underinsured Motorist Endorsement*

    \*    \*    \*    \*    \*    \*

"(3) '*Underinsured motor vehicle*' means a motor vehicle which is:

"(A) Insured by a liability bond or a policy at the time of the accident providing bodily injury liability less than the limit of liability shown in

the Declarations Page for underinsured motorist coverage.

" 'Underinsured motor vehicle' does not mean a vehicle:

* * * * * *

"(B) insured by a liability bond or policy at the time of the accident, but which provides bodily injury limits of liability less than the minimum bodily injury liability limits required by the financial responsibility law of the state in which your insured car is principally garaged."

■ Contracts must be interpreted as a whole to give effect to every part if reasonably practicable. *Continental Western Ins. Co. v. The Dam Bar*, 478 N.W.2d 373 (N.D. 1991). The quoted provisions of Guaranty's policy, when construed together, clearly preclude an insured from receiving both uninsured and underinsured benefits, when the tortfeasor's vehicle is insured but carries less than the minimum statutorily required amounts. In such a case, the vehicle is defined as an uninsured vehicle under Part III, Paragraph 3(B) of the policy. It is then explicitly declared not an underinsured motor vehicle by the language of Paragraph 3(B) of the Underinsured Motorist Endorsement.

The insurance policy explicitly looks to the state where the insured's car "is principally garaged" to determine if the tortfeasor's vehicle carries less than the statutorily required liability insurance. In the party's stipulation of facts, it is conceded Jeff's vehicle was principally garaged in Arizona and that Rosaaen's vehicle carried the Arizona statutory minimum liability limits of $15,000 per person and $30,000 per accident. Consequently, on the face of Jeff's policy, Rosaaen's vehicle is not an uninsured motor vehicle. However, Erika claims Rosaaen's vehicle is uninsured under Arizona's interpretation of its financial responsibility law, that a vehicle is deemed to have less than the statutory minimum required liability insurance when an injured claimant receives less than $15,000 because the insurance proceeds are split among multiple claimants. *Porter v. Empire Fire & Marine Ins. Co.*, 106 Ariz. 274, 475 P.2d 258 (1970). Although Rosaaen's vehicle carried $15,000 of liability insurance per person, only $5,000 was made available to Erika because there were multiple claimants. Erika asserts Rosaaen's vehicle was therefore an "uninsured motor vehicle" under Jeff's policy, because only $5,000, not the $15,000 statutory minimum limit, was available to her.

■ In *Porter*, the Supreme Court of Arizona held that a claimant for UM coverage, who recovers less than the statutory minimum amount of coverage under the negligent motorist's liability insurance because the proceeds are split among multiple claimants, may recover UM benefits up to the statutory minimum liability requirements. In effect, the *Porter* case created a legal fiction that a tortfeasor's motor vehicle, although carrying some insurance, is considered an uninsured vehicle to the extent the minimum liability amounts are not made available to the injured claimant. The rationale of the *Porter* case is that a negligent motorist who has purchased some liability insurance is functionally uninsured when the minimum statutory amount is not available to the injured person under the tortfeasor's policy. *See Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 859 P.2d 724, 727 (1993). Erika urges this court to apply *Porter's* legal fiction to conclude Rosaaen's vehicle is an uninsured vehicle, thereby entitling Erika to receive uninsured motorist benefits under Jeff's policy. However, we must refuse to apply *Porter* in this case, because the *Porter* rationale (i.e. to provide the statutory minimum limits of coverage to an injured party through UM benefits) is inapplicable where, as here, the injured claimant has underinsured motorist coverage. The claimant in *Porter* only had uninsured motorist coverage, and without *Porter's* legal fiction that the tortfeasor's vehicle was uninsured the claimant would not have received any benefits and thereby would have been deprived of the statutory minimum coverage. Here, Erika has underinsured motorist coverage for a circumstance like this, in which the tortfeasor's vehicle has some, but not enough, liability insurance.

■ A definition of a term in an insurance contract may exclude coverage if the

language of the contract, as a whole, is clear. *Haugen v. Auto-Owners Ins. Co. of Lansing,* 191 N.W.2d 274 (N.D.1971). When the language of an insurance policy is unambiguous it should not be strained to impose liability on the insurer. *Thompson v. Nodak Mutual Ins. Co.,* 466 N.W.2d 115 (N.D.1991). We conclude Jeff's automobile liability policy with Guaranty unambiguously precludes Erika from receiving both UM and UIM benefits under these circumstances. We further conclude that under Jeff's policy Rosaaen's vehicle is an underinsured, not an uninsured, motor vehicle and, therefore, Erika is entitled to receive UIM coverage.

■ Jeff carried $25,000 of UIM coverage under his policy. The parties stipulated Erika's damages exceed $25,000 and the trial court appropriately awarded Erika UIM benefits of $20,000 (i.e. $25,000 UIM coverage less $5,000 received in settlement from Rosaaen's insurance carrier). *See Score v. American Family Mutual Ins. Co.,* 538 N.W.2d 206 (N.D.1995). However, Guaranty argues Erika is entitled to only $15,000 of UIM benefits. Guaranty asserts the $5,000 Jan received in settlement with Old Hickory should also be deducted from Erika's coverage because Jan had no legitimate claim for damages resulting from Jeff's death and therefore her $5,000 settlement should be attributed to Erika and deducted from Erika's UIM coverage. Guaranty has provided no legal authority to support its position of attributing Jan's settlement to Erika. Furthermore, we conclude Guaranty has waived this issue through its stipulation of facts:

"Plaintiffs asserted claims for their damages against Rosaaen. Plaintiffs notified Guaranty that Jan Bjornson and Erika Bjornson were both making claims against Rosaaen and requested Guaranty's approval. Guaranty knew, as early as April, 1990, that both Jan Bjornson and Erika Bjornson were making a claim against Rodger Rosaaen for the wrongful death of Jeff Bjornson.

\* \* \* \* \* \*

"In November, 1990, Plaintiff Erika Bjornson and Plaintiff Jan Bjornson each settled with Old Hickory, Rosaaen's liability carrier for $5,000, a total of $10,000. In con-

summation thereof Plaintiff Erika Bjornson received $5,000 from Old Hickory and Jan Bjornson received $5,000 from Old Hickory. Neither Jan nor Erika have received any other amounts from Rosaaen or Rosaaen's liability carrier.

"Guaranty, after being notified of the terms of the settlement with Old Hickory, did not object to the settlement."

By its stipulation, Guaranty concedes it was notified Old Hickory gave Erika and Jan each $5,000 in settlement of their separate claims against Rosaaen and that Guaranty did not object to the settlement. Having acquiesced in the settlement, Guaranty cannot now complain about it.

In accordance with this opinion, the trial court's award of UIM benefits to Erika in the amount of $20,000 is affirmed and the court's award of UM benefits of $10,000 is reversed.

AFFIRMED IN PART AND REVERSED IN PART.

VANDE WALLE, C.J., and LEVINE, MESCHKE and SANDSTROM, JJ., concur.