ECONOMY PREMIER ASSURANCE COMPANY, Plaintiff and Defendant-Appellant, v. TOMMY W. JACKSON *et al.*, Defendants and Plaintiffs-Appellees (Safeco Insurance Company of Illinois, Defendant; Sarah Jackson, Plaintiff-Appellee).—ELLEN ANN HALL *et al.*, Plaintiffs and Defendants-Appellees, v. SAFECO INSURANCE COMPANY OF ILLINOIS, Defendant-Appellant (Economy Premier Assurance Company, Plaintiff and Defendant; Sarah Jackson, Plaintiff-Appellee).

Second District    Nos. 2—08—0087, 2—08—0310 cons.

Opinion filed July 17, 2009.

Joseph P. Postel and Christopher J. Pickett, both of Lindsay & Rappaport, LLC, of Waukegan, for appellant.

James F. Best and Allison M. Burnett, both of Best, Vanderlaan & Harrington, of Chicago, for appellee Safeco Insurance Company.

Philip J. Ryan and Sara M. Davis, both of Ryan, Ryan & Landa, Ltd., of Waukegan, for other appellees.

PRESIDING JUSTICE ZENOFF delivered the opinion of the court:

This consolidated appeal presents the question of whether the antistacking clauses of two separate insurance policies issued to two separate insureds apply to claims arising from the death of a common insured. We affirm the judgment of the circuit court of Lake County, which answered the question in the negative and entered judgment in favor of the appellees.

## FACTUAL BACKGROUND

The facts are undisputed. Ellen Ann Hall and Tommy W. Jackson (Tommy) were divorced and lived apart. Their son, Thomas Jackson (Thomas), was a resident of each parent's household. On April 16, 2004, Thomas was a passenger in a vehicle operated on Lewis Avenue in Waukegan, Illinois, by Christian DeFilippo. The DeFilippo vehicle was not owned by Ellen, Tommy, or anyone related to them. DeFilippo negligently turned left in front of an oncoming vehicle, causing a collision in which Thomas died and another passenger was seriously injured. The driver of the oncoming vehicle was also injured.

Ellen had purchased an automobile insurance policy from Safeco Insurance Company of Illinois (Safeco), which was in effect at the time of the accident that killed Thomas. Her policy included underinsured motorists (UIM) coverage in the amount of $100,000 each person/$300,000 each accident. Tommy had purchased an automobile insurance policy from Economy Premier Assurance Company (Economy), which was in effect at the time of Thomas's death, and which provided UIM coverage in the amount of $100,000 per person/$300,000 per occurrence. Neither Ellen nor Tommy had any other automobile insurance policies, and neither Tommy nor Ellen was an insured under each other's policy. However, Thomas was an insured under both policies.

The DeFilippo vehicle was insured by Allstate. The Allstate policy had bodily injury liability limits of $50,000 per person/$100,000 per occurrence. Allstate paid its $100,000 limit in settlement of claims made against DeFilippo, as follows: Ellen received $15,000; Tommy received $15,000; Sarah Jackson (Thomas's sister) received $15,000; and the remaining $55,000 was paid to the other two injured victims.

Ellen made a claim with Safeco under her UIM coverage, and a dispute over the amount payable ensued. Tommy, likewise, made a claim with Economy under his UIM coverage, and a dispute arose. The disputes arose when both insurers took the position that they were entitled to share liability under their respective antistacking clauses. In other words, instead of each paying the $100,000 per-person UIM limit to its respective insured, for a total of $200,000, they maintained that each had to pay only a share of a single $100,000 per-person limit because there had been only one loss—Thomas's death.

## PROCEDURAL BACKGROUND—THE COMPLAINTS

On September 5, 2006, Economy filed a declaratory judgment action in No. 06—MR—1158 against Ellen and Tommy, seeking a determination that the maximum available limit of UIM coverage under its policy was $25,000. In the complaint, Economy agreed that the DeFilippo vehicle was underinsured because its bodily injury liability limit of $50,000 per person was less than the $100,000 per-person limit of the Economy policy. Next, Economy alleged that its $100,000 had to be reduced by the $50,000 bodily injury liability limit of the Allstate policy covering the DeFilippo vehicle, leaving $50,000 available as Economy's UIM coverage. Then Economy alleged that Ellen's Safeco policy was "other similar insurance" and that Economy's obligation was to pay only "its fair share," which was $25,000.

On January 9, 2007, Tommy, Ellen, and Sarah (collectively Hall-Jackson) filed suit in No. 07—MR—26 against Economy. In count I, Tommy alleged that Economy breached its contract of insurance when, in response to Tommy's claim, it represented that its policy provided only $25,000 of UIM coverage, although Tommy had paid premiums for $100,000 of UIM coverage. In count II, Tommy sought a declaration that Economy could not reduce the $100,000 by the full $50,000 Allstate limit, because Allstate did not pay Tommy $50,000. Count II further alleged that Economy was estopped from taking any setoff, because it breached the insurance contract. In count III, Tommy sought a declaration that Economy wrongly claimed that Ellen's Safeco policy was "other similar insurance" within the meaning of the Economy policy provisions. In count IV, Tommy alleged alternatively to count III that he was Thomas's next of kin, sustained damages under the Wrongful Death Act (740 ILCS 180/0.01 et seq. (West 2006)), and was entitled to the full coverage of $100,000. In count V, Ellen and Sarah alleged that they were Thomas's next of kin, suffered damages under the Wrongful Death Act, and were entitled to recover UIM benefits from the Economy policy.

On February 20, 2007, Hall-Jackson filed suit in No. 07—MR—235 against Safeco. In count I, Ellen alleged that Safeco breached its insurance contract when it wrongly claimed that its policy provided only $20,000 of UIM coverage even though she had paid premiums for $100,000 per-person coverage. Ellen further alleged that after Safeco wrongly determined that its policy provided $20,000 of UIM coverage, it later wrongly revised the figure to $22,500. She claimed that Safeco wrongly reduced the $100,000 by subtracting the $45,000 paid by Allstate to all of Thomas's heirs, then wrongly subtracted the combined $10,000 medical payments coverage of the Economy policy and the Safeco policy, leaving $45,000 of coverage, which it then wrongly reduced by half, claiming that the Economy policy was "other insurance." Ellen further alleged that because Safeco breached the insurance contract, it was estopped from enforcing any other policy provision that would reduce the $100,000 of UIM coverage. She alleged that Tommy and Sarah were necessary parties because they were next of kin under the Wrongful Death Act. In count II, Ellen sought a declaration that the Economy policy was not "other insurance."

To recap, the suits were:

No. 06—MR—1158—Economy v. Ellen and Tommy

No. 07—MR—26—Hall-Jackson v. Economy

No. 07—MR—235—Hall-Jackson v. Safeco

## THE MOTION PRACTICE

On July 3, 2007, Economy filed a motion for judgment on the pleadings in both No. 06—MR—1158 and No. 07—MR—26; on August 16, 2007, Safeco filed a motion to dismiss in No. 07—MR—235; and on September 12, 2007, Hall-Jackson filed a response to Safeco's motion to dismiss and a cross-motion for judgment on the pleadings against Safeco.[1] On January 3, 2008, the trial court ruled on all of the motions. Pertinent to this appeal, the court denied Safeco's motion to dismiss. It held that the $100,000 per-person limits of each policy were reduced by the $45,000 Allstate paid to Hall-Jackson, giving each insurer a setoff of $22,500. The court held that the antistacking clauses of the policies were not applicable and entered judgment against Economy and in favor of Tommy in the amount of $77,500 and against Safeco and in favor of Hall-Jackson in the amount of $77,500. Safeco filed a motion to reconsider, which the trial court denied. This timely appeal followed.

---

[1]The trial court referenced and ruled on a cross-motion for judgment on the pleadings filed by Hall-Jackson against Economy. That document is not part of the record.

## ANALYSIS

In this appeal, Economy and Safeco (collectively the companies) contend that the trial court erred when it "stacked" both policies, which they contend allowed a double recovery. Stacking is "the process of obtaining benefits from a second insurance policy *on the same claim* when recovery on the first policy alone would be inadequate." (Emphasis added.) Black's Law Dictionary 1440 (8th ed. 2004).

## HALL-JACKSON'S CLAIM THAT SAFECO IS ESTOPPED

■ We first address Hall-Jackson's argument that Safeco is estopped from pursuing this appeal, because the trial court found that it breached its insurance contract with Ellen by wrongly deducting medical payment benefits from the UIM coverage.

Part B of Ellen's Safeco policy is entitled "Medical Payments Coverage," and it obligated Safeco to pay "the usual and customary charges incurred for reasonable and necessary medical and funeral expenses because of bodily injury caused by accident and sustained by an insured." The amount of medical payments coverage was $5,000. Under the policy, Thomas was an insured. In calculating the amount Ellen was entitled to recover in UIM coverage, Safeco deducted the $5,000 medical payments (plus the $5,000 in medical payments from Economy's policy).

Ellen maintained in her complaint against Safeco that one of the ways in which Safeco breached the insurance contract was in deducting the medical payments. In *Melson v. Illinois National Insurance Co.*, 1 Ill. App. 3d 1025, 1028 (1971), this court held that where the total proven or undisputed damages incurred by the insured are greater than the combined total of uninsured and medical payments coverage, the crediting provision of an insurance policy (allowing setoff for medical payments) cannot apply. (In *Melson*, the plaintiff's damages exceeded the $10,000 uninsured motorists coverage and the $2,000 medical payments coverage; therefore, the insurer was not allowed to deduct $2,000 from $10,000 for a payout of only $8,000.)

In the motion for judgment on the pleadings against Safeco, Hall-Jackson argued that the $10,000 medical payments deduction was a breach of contract because their damages far exceeded $100,000 in UIM coverage combined with $5,000 in medical payments coverage. Hall-Jackson now urge that the trial court's ruling that Safeco could not deduct the medical payments was a ruling that it breached the insurance contract. From this, Hall-Jackson conclude that Safeco should be estopped from claiming the benefit of any other policy provision that inures to its benefit. Hall-Jackson invoke the rule that an insurer that breaches the portions of an insurance contract inuring to

the benefit of the insured cannot insist that the insured be bound by the provisions that inure to the benefit of the insurer. *Dinn Oil Co. v. Hanover Insurance Co.*, 87 Ill. App. 2d 206, 212 (1967).

We infer from the court's ruling in favor of Hall-Jackson that the court was not making an implicit finding of breach but, rather, was declaring the parties' rights under the insurance contract. Moreover, the court was most careful in articulating its findings, and it did not specifically make a finding that Safeco was in breach. Under these circumstances, we hold that Safeco is not estopped.

## WHETHER THE ANTISTACKING PROVISIONS OF THE TWO POLICIES APPLY TO THE FACTS OF THIS CASE

The facts in this case are not disputed. The only issue is whether the trial court impermissibly stacked the UIM coverage of both policies. The trial court's judgment was rendered on cross-motions for judgment on the pleadings. The proper standard of review of a judgment on the pleadings is *de novo. Filliung v. Adams*, 387 Ill. App. 3d 40, 50 (2008).

We begin our analysis with a look at the relevant provisions of each insurance policy. The declarations page of the Safeco policy recited that Ellen purchased UIM coverage in the amount of $100,000 each person/$300,000 each accident. Under the section of the policy entitled "Uninsured/Underinsured Coverage," appeared a provision entitled "Limit of Liability":

"A. The limit of liability shown in the Declarations for 'each person' for Uninsured/Underinsured Motorists Coverage is our maximum limit of liability for all damages including damages for care and loss of services (including loss of consortium and wrongful death), arising out of bodily injury sustained by any one person in any one accident."

This part of the policy also contained an "other insurance" clause, which provided in part:

"B. For Underinsured Motorists Coverage only:

If there is other applicable insurance available under one or more policies or provisions of coverage:

1. Any recovery for damages under all such policies or provisions of coverage may be equal [to] but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis.

3. If the coverage under this policy is provided:

a. on a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

b. on an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis."

The Economy policy issued to Tommy contained a declarations page showing that Tommy purchased UIM coverage in the amount of $100,000 per person/$300,000 per occurrence. The Economy policy contained a "Limit of Liability" clause:

"The limit of liability shown in the Declarations for 'each person' is the most we will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services or death, arising out of bodily injury sustained by any one person as the result of any one accident. Subject to this limit for 'each person,' the limit shown in the Declarations for 'each accident' for bodily injury liability, is the most we will pay for all damages, including damages for care, loss of consortium, emotional distress, loss of services or death, arising out of bodily injury sustained by two or more persons resulting from any one accident."

The Economy policy also contained an "other insurance" clause:

"If there is other similar insurance, we will pay only our fair share. The total amount of recovery under all policies will be limited to the highest of the applicable limits of liability of this insurance and such other insurance.

Our fair share is the proportion that our limit bears to the total of all applicable limits. However, if you do not own the motor vehicle, our insurance will be excess over other similar uninsured or underinsured insurance available but only in the amount by which the limit of liability of this policy exceeds the limits of liability of the other available insurance. If there is other excess or contingent insurance, we will pay our fair share."

The companies contend that because Thomas was a common insured under both policies, the above antistacking provisions of the policies apply and limit Hall-Jackson to one $100,000 UIM recovery. Hall-Jackson contend that no stacking of the policies has occurred, because Tommy and Ellen are divorced, they have separate policies insuring separate vehicles, and they have separate causes of action for damages arising out of Thomas's wrongful death. In other words, the companies look at the claims for UIM coverage as being made on

behalf of Thomas or his estate, while Hall-Jackson maintain that their claims are for their own individual damages accruing to them as next of kin under the Wrongful Death Act (740 ILCS 180/0.01 *et seq.* (West 2006)).

It is necessary to examine who precisely cannot "stack." Our supreme court has determined that antistacking clauses in insurance policies, like those quoted above, generally do not contravene public policy. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17-18 (2005). The legislature has authorized the use of such provisions. Section 143a—2(4) of the Illinois Insurance Code (Code) (215 ILCS 5/143a—2(4) (West 2006)) provides in part:

> "(4) For the purpose of this Code the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident." 215 ILCS 5/143a—2(4) (West 2006).

Subsection 5 provides in part:

> "(5) Scope. Nothing herein shall prohibit an insurer from setting forth policy terms and conditions which provide that if the insured has coverage available under this Section under more than one policy or provision of coverage, any recovery or benefits may be equal to, but may not exceed, the higher of the applicable limits of the respective coverage, and the limits of liability under this Section shall not be increased because of multiple motor vehicles covered under the same policy of insurance." 215 ILCS 5/143a—2(5) (West 2006).

The "insured" referred to in subsections (4) and (5) means the insured who sustains bodily injury, in this case Thomas. For stacking to occur, the insured seeking to aggregate the policies must have coverage available under more than one policy or provision of coverage. For purposes of subsection (5), Thomas was the only insured who had coverage under more than one policy. Such is the companies' understanding as well, as they refer in their briefs to the claimant as Thomas's estate or to Thomas as the common insured or to claims for Thomas's death.

■ In this case, unfortunately, Thomas died as a result of DeFilippo's negligence in turning in front of the oncoming vehicle. Hall-Jackson are the next of kin and have a cause of action for their own damages arising out of the wrongful death. Their pleadings make clear

that the claims they made for UIM proceeds are their own separate claims as next of kin. The provisions of the Wrongful Death Act seek to protect the legal right of next of kin to be compensated for the pecuniary loss sustained by reason of the death of an injured person. *Johnson v. Provena St. Therese Medical Center*, 334 Ill. App. 3d 581, 589 (2002). It is for this loss, personal to themselves, that Hall-Jackson seek to recover. Ellen and Tommy were covered by one insurance policy each. Neither was an insured under the other's policy. Neither had coverage available under more than one policy or provision of coverage. Consequently, the antistacking clauses are not applicable to our facts.

The companies' erroneous insistence in their briefs that Hall-Jackson are making the claims on behalf of Thomas's estate, or that the claims are for Thomas's bodily injury, leads them to advance untenable arguments. For instance, Safeco contends that the "other insurance" clauses of the two policies cancel each other, which results in the two companies paying on a prorated basis. However, the "other insurance" clauses never come into play, because Ellen and Tommy had separate policies insuring discrete risks. For this reason, Safeco's reliance on *McElmeel v. Safeco Insurance Co. of America*, 365 Ill. App. 3d 736 (2006), a case in which the plaintiffs sought to stack three policies insuring three cars owned by the plaintiffs, is misplaced.

Likewise, Safeco's argument that if Thomas had survived the accident he would have been entitled to no more than a total of $100,000 in UIM coverage from both companies is irrelevant. If Thomas had survived, he would be the insured for purposes of sections 143a—2(4) and (5) of the Code. Thomas did not survive, and Hall-Jackson's claims are not Thomas's claims. Safeco's argument, made in its reply brief, that had the DeFilippo car been adequately insured Tommy and Ellen would have brought suit collectively in a single claim on behalf of Thomas's estate, is also irrelevant. Had the DeFilippo vehicle been adequately insured, no UIM coverage issues would exist. Moreover, whether Tommy and Ellen would have filed one lawsuit or two, their damages would still be personal to each of them. A survivor action would be the action brought on behalf of Thomas's estate to recover for injuries Thomas suffered.

In its reply brief, Economy argues that the provisions of the Wrongful Death Act are irrelevant because the claims are controlled by the language of the policies, not the Wrongful Death Act. The Wrongful Death Act is relevant insofar as it furnishes the cause of action upon which Ellen's and Tommy's claims against their insurance companies are based. Economy asserts that the policies specifically provide that one single per-person limit is recoverable for Thomas's

death, regardless of the number of claimants. This would be true in our case if Tommy and Ellen had been insureds under each other's policies. *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 187 (1993) (antistacking provisions of insurance policies apply to policies issued to person seeking to aggregate coverage).

The companies assert that *Illinois Farmers Insurance Co. v. Marchwiany*, 222 Ill. 2d 472 (2006), controls this issue and limits Hall-Jackson to one $100,000 UIM limit. However, the issue in *Marchwiany* was whether the per-person or per-occurrence UIM limit applied. In *Marchwiany*, Boguslaw, while driving a car belonging to his wife, Urszula, was killed in a three-car accident. *Marchwiany*, 222 Ill. 2d at 474. He was survived by Urszula and four children as next of kin. *Marchwiany*, 222 Ill. 2d at 475. Urszula's vehicle was insured by Farmers with UIM coverage limits of $100,000 per person and $300,000 per occurrence. *Marchwiany*, 222 Ill. 2d at 474. The same vehicle was also insured by American Family under a policy providing UIM coverage with limits identical to the Farmers policy. *Marchwiany*, 222 Ill. 2d at 474.

After the tortfeasors' insurers settled Urszula's claims, Urszula asserted UIM claims against American Family and Farmers. *Marchwiany*, 222 Ill. 2d at 475. American Family's insurance was primary, and it paid $80,000, representing the difference between its $100,000 per-person UIM limit and the $20,000 Urszula had obtained from the tortfeasors. *Marchwiany*, 222 Ill. 2d at 475. Because Farmers' coverage was excess, and its coverage was identical to American Family's, Farmers denied the UIM claim. *Marchwiany*, 222 Ill. 2d at 475. Farmers filed suit, and Urszula counterclaimed, asserting that the survivors' claims were subject to Farmers' $300,000 per-occurrence limit, which exceeded the American Family limit. *Marchwiany*, 222 Ill. 2d at 475. The trial court granted Farmers' motion for summary judgment and denied Urszula's motion, and the appellate court affirmed. *Marchwiany*, 222 Ill. 2d at 475.

The issue before our supreme court was whether the $300,000 limit was applicable because more than two persons sought recovery for injuries resulting from a single bodily injury. *Marchwiany*, 222 Ill. 2d at 477. Our supreme court held that the Farmers policy limited all consequential damages resulting from Boguslaw's bodily injury to the $100,000 limit, no matter how many claimants there were. *Marchwiany*, 222 Ill. 2d at 481.

*Marchwiany* is inapplicable to the facts in our case. First, both the American Family policy and the Farmers policy covered the same automobile, and the insureds were the same under each policy. Second, *Marchwiany* decided only that Urszula's and the children's claims

were subject to the per-person limit rather than the per-occurrence limit because the Farmers policy unambiguously restricted all consequential damages arising out of Boguslaw's death to the per-person limit regardless of the number of claimants, a question not presented under our facts.

We have found no Illinois decision with facts like these. Hall-Jackson rely on *Boullt v. State Farm Mutual Automobile Insurance Co.*, 99—0942 (La. 10/19/99), 752 So. 2d 739. In *Boullt*, the parents of the decedent were divorced, maintained separate households, and had joint custody of their daughter, and each owned separate insurance policies with neither being insured under the other's policy. *Boullt*, 99—0942, p.1, 752 So. 2d at 740. Their daughter suffered fatal injuries in a car accident while she was a passenger in a vehicle owned by someone other than herself or her parents. *Boullt*, 99—0942, p.1, 752 So. 2d at 740. The parents settled the deceased daughter's survival claim against the tortfeasor and then made separate UIM claims for their own damages for their daughter's wrongful death under their respective policies. *Boullt*, 99—0942, p.1-2, 752 So. 2d at 740. The insurance companies claimed that Louisiana's antistacking statute prohibited the parents from recovering under both policies. *Boullt*, 99—0942, p.2, 752 So. 2d at 740. The Louisiana Supreme Court disagreed and held that stacking had not occurred, because neither parent was an insured under the other's policy (" 'The question of "stacking" only arises once it is determined that the person seeking to cumulate benefits on two or more uninsured motorist coverages is an insured under the terms of those policies' "). *Boullt*, 99—0942, p.15, 752 So. 2d at 743, quoting *Seaton v. Kelly*, 339 So. 2d 731, 735 (La. 1976).

The companies argue that *Boullt* is not persuasive authority because the result there depended upon construction of Louisiana law, which is different from Illinois's statutes. We do not believe that the Louisiana antistacking statute is disharmonious with our own. Louisiana's statute provided that the limits of uninsured motorists coverage shall not be increased when the insured had available to him more than one coverage or policy. This is consistent with section 143a—2(5) of the Code. We consider *Boullt* persuasive.

The salient facts in our case are: (1) neither Tommy nor Ellen was an insured under the other's policy; (2) neither Tommy nor Ellen had coverage available under more than one policy or provision of coverage; (3) Hall-Jackson were not the "insured" for purposes of sections 143a—2(4) and (5) of the Code; and (4) Hall-Jackson's claims were not synonymous with any claims Thomas or his estate could have made. For these reasons, no stacking occurred.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

McLAREN and SCHOSTOK, JJ., concur.