2013 ND 112

**Michelle TWETEN and Tony Tweten, Plaintiffs**

v.

**COUNTRY PREFERRED INSURANCE COMPANY and American National Property and Casualty Company, Defendants.**

No. 20120306.

Supreme Court of North Dakota.

July 17, 2013.

David S. Maring (argued) and James R. Hoy (appeared), Bismarck, ND, for plaintiffs.

Frank J. Rajkowski (argued) and Gordon H. Hansmeier (on brief), St. Cloud, MN, for defendant, Country Preferred Insurance Company.

W. Todd Haggart, Fargo, ND, for defendant, American National Property and Casualty Company.

CROTHERS, Justice.

[¶ 1] The United States District Court for the District of North Dakota certified a question to this Court asking:

> "Based on the stipulated facts, the language of the automobile insurance policies, and N.D.C.C. Ch. 26.1–40, is the term 'insured' restricted solely to the minor son, who was killed in an underinsured motor vehicle accident, in which his divorced parents, each of whom had separate policies insuring the deceased son, were uninvolved and unharmed in the underlying automobile accident, such that the parents are foreclosed from recovering up to the full amount of underinsured motorist benefits from their respective policies under the 'other insurance' clause contained in each policy and the statutory anti-stacking provisions of NDCC Ch. 26.1–40?"

We answer the question, "Yes."

## I

[¶ 2] Michelle Tweten and Tony Tweten brought an action against COUNTRY Preferred Insurance Company and American National Property and Casualty Company ("ANPAC"), seeking the full amount of underinsured motorist coverage from both insurance companies for the Twetens' respective policies. The United States District Court for the District of North Dakota certified a question to this Court and ordered the underlying case stayed pending our decision.

[¶ 3] The parties stipulated to the relevant facts. T.T., the minor child of Michelle Tweten and Tony Tweten, died in a single motor vehicle accident in Fargo in 2010. Michelle Tweten and Tony Tweten married in 1988 and divorced in 2004. They maintained separate households in Fargo since their divorce. At the time of T.T.'s death, Michelle Tweten was insured under a policy issued by COUNTRY, which provided underinsured motorist coverage of $250,000. Tony Tweten was insured under a policy issued by ANPAC, which provided underinsured motorist coverage of $250,000.

[¶ 4] T.T. was a passenger in a vehicle driven by E.N. E.N. was insured by Horace Mann Insurance Company with liability limits of $100,000 per person. No other liability insurance was available to satisfy the claims arising from the death of T.T. The vehicle driven by E.N. was underinsured. The Twetens settled their claim against E.N. for $100,000 and gave notice to COUNTRY and ANPAC that they could substitute their checks in order to preserve their potential claims against E.N. Neither company did. The Twetens sued COUNTRY and ANPAC to recover

underinsured motorist benefits and claimed each insurer owed its per person limit of $250,000. COUNTRY and ANPAC argued that under North Dakota law and the language of the policies, their liability was limited by statute to $125,000, respectively.

## II

[¶5] Certification of questions to this Court by federal courts is permitted under our appellate rules of procedure:

"Power to answer. The supreme court may answer questions of law certified to it by the United States Supreme Court, a court of appeals of the United States, a United States district court, or the highest appellate or intermediate appellate court of any other state, when requested by the certifying court and the following conditions are met:

"(1) questions of law of this state are involved in any proceeding before the certifying court which may be determinative of the proceeding:

"(2) it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state."

N.D.R.App.P. 47(a). Here, the certifying court found:

"The Court believes that the North Dakota Supreme Court has a significant interest in construing this matter of first impression under the insurance laws of North Dakota. The Legislature has enacted a comprehensive prohibition against the stacking of insurance benefits, but it is not clear how the stacking prohibition affects identical insurance claims of divorced parents, on separate policies, for the death of their minor son. As all parties agree, resolution of the certified question will resolve all legal issues in this case. The only issue that could possibly remain is the determination of damages, should the North Dakota Supreme Court find in favor of the plaintiffs.

"The Court believes this question presents two reasonable interpretations of North Dakota law and should be resolved by the North Dakota Supreme Court."

These findings by the certifying court satisfy the requirement of N.D.R.App.P. 47(a), and we proceed to answer the certified question.

## III

[¶6] COUNTRY and ANPAC seek a "yes" answer to the certified question, arguing North Dakota's anti-stacking statute and the language of the respective insurance policies restrict the Twetens' recovery to $125,000 per policy. The Twetens seek a "no" answer to the certified question, arguing they each may recover the full amount of underinsured motorist coverage from their respective policies because no impermissible stacking of policies exists.

[¶7] Underinsured motorist coverage is required by statute:

"The insurer shall also provide underinsured motorist coverage at limits equal to the limits of uninsured motorist coverage. Underinsured motorist coverage must pay compensatory damages which an insured is legally entitled to collect for bodily injury, sickness, disease, including death resulting therefrom, of such insured, from the owner or operator of an underinsured motor vehicle arising out of the ownership, maintenance, or use of such underinsured motor vehicle."

N.D.C.C. § 26.1-40-15.3(1). COUNTRY and ANPAC argue the term "insured" refers only to the injured party, T.T., according to the plain meaning of the statute.

The Twetens argue the term "insured" is not restricted solely to T.T. and, even if it is, COUNTRY and ANPAC provided greater underinsured motorist coverage under the respective policies than required by N.D.C.C. § 26.1–40–15.3(1).

[¶ 8] COUNTRY and ANPAC argue that when viewing T.T. as the sole "insured" entitled to underinsured motorist benefits, it follows that the Twetens cannot recover under both policies due to North Dakota's anti-stacking statute:

> "Regardless of the number of motor vehicles involved, the number of persons covered or claims made, vehicles or premiums shown in the policy or premiums paid, the limit of liability for uninsured motorist or underinsured motorist coverage may not be added to or stacked upon limits for such coverages applying to other motor vehicles to determine the amount of coverage available to an *insured* in any one accident."

N.D.C.C. § 26.1–40–15.4(2) (emphasis added). COUNTRY and ANPAC argue the term "insured" from this section refers to T.T. and coverage may not be stacked. The Twetens argue they each are individual insureds with separate policies and the anti-stacking statute is inapplicable to their claims.

[¶ 9] The question certified to this Court contains two separate issues. The first issue is whether the Twetens are foreclosed from full recovery from both policies based on the anti-stacking provisions of N.D.C.C. ch. 26.1–40. The second issue is whether the Twetens are foreclosed from full recovery from both policies based upon the "other insurance" language in both policies. While an anti-stacking law and an "other insurance" clause may have the same effect on limiting a party's recovery, they require separate analysis. An "other insurance" clause addresses the rules for determining responsibility be-

tween insurance companies or policies if more than one coverage applies, while stacking refers to whether more than one coverage, which would otherwise be applicable, should be applied as a matter of law. 12 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 169:9 (3rd ed.2005). Therefore, we first examine the effect of North Dakota's anti-stacking statute before addressing, if necessary, the "other insurance" clauses of the Twetens' respective policies.

## A

[¶ 10] Section 26.1–40–15.4(2), N.D.C.C., prohibits an insured from stacking underinsured motorist coverage applying to other motor vehicles to determine the amount of coverage available to the insured in any one accident, regardless of "the number of motor vehicles involved, the number of persons covered or claims made, vehicles or premiums shown in the policy or premiums paid." Subsection (3) explains, "If an insured is entitled to uninsured motorist or underinsured motorist coverage under more than one policy, the maximum amount such insured may recover may not exceed the highest limit of such coverage provided for any one vehicle under any one policy." N.D.C.C. § 26.1–40–15.4(3). The Twetens argue that their separate recoveries from separate policies do not violate North Dakota's anti-stacking statute because neither Michelle Tweten nor Tony Tweten is entitled to recover underinsured motorist coverage under the other's policy. We disagree.

[¶ 11] The Twetens principally rely on *Boullt v. State Farm Mut. Auto. Ins. Co.,* where the Louisiana Supreme Court held recovery of uninsured motorist coverage by divorced insureds for the wrongful death of their child did not constitute impermissible stacking of the parents' separate policies. 752 So.2d 739, 740 (La.1999).

There, as here, the Boullts were divorced and had separate policies on their own vehicles. *Id.* at 744. Separate premiums were paid by the Boullts for their respective policies. *Id.* The Boullts' child was considered a resident of both households for coverage purposes at the time of her death. *Id.* at 740. The court explained, "Each parent suffered his and her own injuries although arising from a single occurrence, i.e., [the child's] death." *Id.* at 744.

[¶ 12] In reaching its conclusion, the court described the concept of stacking. "The issue of stacking only arises once it has been determined that an individual insured has two or more policies or a single policy covering multiple vehicles applying to the same loss." *Boullt,* 752 So.2d at 743. "The question of 'stacking' only arises once it is determined that the person seeking to cumulate benefits on two or more uninsured motorist coverages is an insured under the terms of those policies." *Id.* (quoting *Seaton v. Kelly,* 339 So.2d 731, 735 (La.1976)). The court concluded the Boullts were not stacking policies because they were individual insureds seeking separate recovery under separate policies covering the same event. *Boullt,* at 745.

[¶ 13] Similarly, the Illinois Appellate Court held in *Economy Premier Assurance Co. v. Jackson* that the anti-stacking clauses of separate insurance policies issued to a divorced mother and father did not limit the underinsured motorist benefits recoverable due to the death of their son. 393 Ill.App.3d 929, 332 Ill.Dec. 495, 913 N.E.2d 90, 91 (2009). Like COUNTRY and ANPAC in this case and State Farm in *Boullt,* Economy argued the claims for underinsured motorist coverage were being made on behalf of the deceased child, while the Jacksons argued their claims were for their own individual damages as insureds for the wrongful death of

their son. *Economy Premier,* at 96. The court held the Jacksons' claims for underinsured motorist coverage were separate claims as next of kin of the deceased. *Id.* at 97. The court explained,

"It is for this loss, personal to themselves, that Hall–Jackson seek to recover. Ellen and Tommy were covered by one insurance policy each. Neither was an insured under the other's policy. Neither had coverage available under more than one policy or provision of coverage. Consequently, the antistacking clauses are not applicable to our facts."

*Id.*

[¶ 14] Both *Boullt* and *Economy Premier* rest on the presupposition that neither parent is entitled to underinsured motorist coverage under the other parent's policy. This conclusion assumes the parents are the relevant "insured" for the purposes of the underinsured motorist statutes. The dissent in *Boullt* highlighted the failure of the majority to analyze and resolve the critical issue of who was entitled to underinsured motorist benefits as an insured: "Clearly, the only way the parents can recover under their respective UM policies is for each of them, rather than [the child], to be the 'insured' under the anti-stacking statute." 752 So.2d at 747 (Victory, J., dissenting). If the parents' recovery were dependent upon the deceased child's status as an insured, they would be attempting to stack policies. The dissent concluded, "It is only because [the child] was an insured under each of the Boullt's policies that the policies provide coverage for [the child's] wrongful death." *Id.* at 747–48. Therefore, because the deceased child was the sole "insured," the parents should have been prohibited from recovering under their respective policies. *Id.*

[¶ 15] As pointed out by Justice Victory, the crux of the issue here is whether the term "insured" is limited to the minor son, such that the Twetens are foreclosed from full recovery of benefits from their respective policies because of the statutory anti-stacking provisions of N.D.C.C. ch. 26.1-40. To resolve this question, we must determine who is the "insured" for purposes of recovery of underinsured motorist coverage based on an underlying wrongful death action.

[¶ 16] We have not faced this issue, nor is there extensive caselaw discussing the relationship between wrongful death actions and underinsured motorist coverage. Our decision in *Bjornson v. Guaranty Nat. Ins. Co.* offers some guidance. 539 N.W.2d 46, 47 (N.D.1995). There, Jeff Bjornson was killed while riding in a car driven by Rodger Rosaaen. *Id.* Rosaaen's vehicle was insured by Old Hickory and carried a limit of $15,000 per person and $30,000 per accident. *Id.* Old Hickory settled with multiple claimants, paying out the policy limit of $30,000. *Id.* Erika Bjornson, Jeff Bjornson's daughter, received $5,000 from the settlement. *Id.* Jeff Bjornson had an automobile insurance policy with Guaranty, which provided uninsured and underinsured motorist coverage. *Id.*

[¶ 17] Erika Bjornson incurred damages in excess of $25,000 as a result of her father's death and sued Guaranty for benefits under the uninsured and underinsured motorist coverage of her father's policy. *Bjornson,* 539 N.W.2d at 47. The trial court awarded Erika Bjornson $20,000 in underinsured motorist benefits and $10,000 in uninsured motorist benefits. *Id.* Guaranty appealed, arguing Erika Bjornson was entitled to underinsured motorist coverage but not uninsured motorist coverage. *Id.* We held the insurance policy precluded recovery of uninsured motorist benefits

but that Erika Bjornson was entitled to underinsured motorist coverage. *Id.* at 49. We did not address whether Erika Bjornson was the "insured" entitled to recovery nor how she was entitled to recovery of underinsured motorist benefits for her father's wrongful death. However, we noted, "[T]he trial court appropriately awarded Erika [Bjornson] UIM benefits of $20,000 (i.e. $25,000 UIM coverage less $5,000 received in settlement from Rosaaen's insurance carrier)." *Id.* This language implies the relevant "insured" is the decedent because Jeff Bjornson, the decedent, was the holder of the applicable policy. Therefore, Erika Bjornson's recovery as an heir at law for underinsured motorist benefits for an underlying wrongful death claim was dependent upon the decedent's status as an "insured."

[¶ 18] This interpretation is consistent with a South Dakota case holding a son could not recover underinsured motorist benefits from his own automobile policy for damages arising from the wrongful death of his parents. *Gloe v. Iowa Mut. Ins. Co.,* 694 N.W.2d 238, 250 (S.D.2005). There, Scott Gloe's parents were killed in an automobile accident. *Id.* at 240. His parents did not reside in his household nor were they insureds under his automobile policy. *Id.* Gloe sued Iowa Mutual, his insurance provider, seeking underinsured motorist benefits. *Id.* Gloe was appointed personal representative of his parents' estate to pursue a wrongful death action on behalf of the decedents' statutory beneficiaries. *Id.* Two insurance companies provided coverage relevant to the accident. *Id.* American Family insured the automobile which struck Gloe's parents and Farmer's Insurance Group insured the driver of the automobile. *Id.* Both American Family and Farmer's Insurance Group paid their policy limits to the three children of the decedents, including Gloe. *Id.* Subsequently, Gloe brought an action against Iowa Mutu-

al, seeking underinsured motorist benefits under his own automobile policy. *Id.* at 241.

[¶ 19] Gloe argued he was entitled to underinsured motorist benefits as an insured who sustained damages he legally was entitled to recover. *Gloe,* 694 N.W.2d at 244. While Gloe's insurance policy contained more restrictive language, South Dakota's statutes mandating uninsured and underinsured motorist coverage could be construed broadly to require coverage in any case where an insured was legally entitled to recover damages and the tortfeasor's insurance was inadequate. *Id.* The court disagreed with a broad interpretation of the statute, explaining, "[O]ur cases have noted that the purpose of UM/ UIM coverage is to protect the *insured* party *who is injured* in an automobile accident by the negligence of an uninsured/underinsured motorist." *Id.* at 245. The court concluded that South Dakota's legislature intended to mandate uninsured and underinsured motorist coverage for the protection of the insured for the insured's own bodily injury or death caused by a negligent uninsured or underinsured driver. *Id.* "We do not, however, believe that UM/UIM coverage was mandated for the consequential losses a wrongful death beneficiary incurs simply because that beneficiary has an auto policy and the decedent happens to be a relative for which the beneficiary is legally entitled to maintain a wrongful death action." *Id.*

[¶ 20] Gloe argued such a restrictive interpretation ignored South Dakota's inclusion of "death" in the relevant statutes. *Gloe,* 694 N.W.2d at 246. He argued that limiting recovery in such a manner would write out the right of recovery for "death" of an insured because an insured decedent could not recover for his own wrongful death. *Id.* The court disagreed, explaining

the legislature included the word "death" to cover other types of wrongful death claims. *Id.* The court identified three categories of claimants who could recover underinsured motorist benefits for the wrongful death of the named insured: "the named insured, his family household members, and any other person who has a right to recover for wrongful death are all afforded UIM coverage for the wrongful death of an insured." *Id.*

[¶ 21] The common thread connecting each class of potential claimants of uninsured or underinsured motorist coverage for underlying wrongful death actions is that the decedent is an insured under an applicable policy. The court in *Gloe* explained that the legislature contemplated "survivors of a person killed in an accident with an uninsured motorist would pursue a claim under the *decedent's* uninsured motorist coverage, rather than the survivor's policy." 694 N.W.2d at 247 (quoting *Livingston v. Omaha Property and Cas. Ins. Co.,* 927 S.W.2d 444, 446 (Mo.Ct.App. 1996)). The court noted Gloe's argument was flawed because Gloe focused on his own status as an insured, "when the correct focus should be whether the person who suffered bodily injury or death had UM (or UIM) coverage." *Gloe,* at 247. The court also noted, "[T]he vast majority of courts that have considered this issue have 'uniformly interpreted their respective statutes as providing coverage only for injuries to those insured under the policy.'" *Id.* (quotation omitted). *See Bush v. State Farm Mut. Auto. Ins. Co.,* 905 N.E.2d 1003 (Ind.2009); *Strum v. Swanson,* 221 W.Va. 205, 653 S.E.2d 667 (2007); *Eaquinta v. Allstate Ins. Co.,* 125 P.3d 901 (Utah 2005).

[¶ 22] We conclude recovery of underinsured motorist benefits arising from a wrongful death claim is dependent upon the decedent's status as an "insured" un-

der an applicable policy. Therefore, the Twetens' recovery of underinsured motorist benefits exists because T.T. was an "insured." As such, though the Twetens maintain separate insurance policies and pay separate premiums, it is not their status as insureds under their own policies that gives rise to their rights to underinsured motorist benefits, but T.T.'s status as an insured. Consequently, the term "insured" refers solely to T.T. T.T. is the "insured" entitled to underinsured motorist coverage under N.D.C.C. § 26.1–40–15.3(1). Section 26.1–40–15.4(2), N.D.C.C., prohibits stacking policies to determine the amount of coverage available.

### B

[¶ 23] We do not address what effect, if any, the "other insurance" clauses in the Twetens' policies had because the Twetens are foreclosed from recovering under our application of N.D.C.C. § 26.1–40–15.4(2).

### IV

[¶ 24] The response to the United States District Court's certified question is, "Yes."

[¶ 25] GERALD W. VANDE WALLE, C.J., BRUCE BOHLMAN, S.J., GEORGIA DAWSON, S.J., ALLAN SCHMALENBERGER, S.J., concur.

[¶ 26] The Honorable ALLAN L. SCHMALENBERGER, S.J.; the Honorable BRUCE E. BOHLMAN, S.J.; and the Honorable GEORGIA DAWSON, S.J., sitting in place of MARING, J.; KAPSNER, J.; and SANDSTROM, J., disqualified.